## ROBERTS et al. v. TUTTLE et al.

No. 1999.   Decided December 10, 1909 (105 Pac. 916).

1. CONTRACTS—CONSTRUCTION—INTENT OF PARTIES.   Where the parties to a contract involving uncertainty as to its meaning have given it the same practical construction, that construction will generally be adhered to by the courts in giving effect to its provisions.[1]   (Page 629.)

2. VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT—AMOUNT OF DEFERRED PAYMENTS.   Under a contract of sale providing for payment of the balance of the price "in monthly installments of twenty dollars per month with seven per cent. interest," the purchaser is required to pay only twenty dollars per month inclusive of interest, and the general rule of partial payments applies. (Page 630.)

3. VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT—"GOOD AND MARKETABLE TITLE."   In a contract for the sale of land made between the agent of the owner and the purchaser, the words requiring a "good and marketable title" refer to the record title, or the chain of title as shown by the public records, and not to the agent's authority from the owner to make the contract. (Page 631.)

4. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—RIGHTS OF THIRD PERSONS.   The purchasers of land in making the contract with the agent of the owner may assume that the agent has the authority he appears to have, and need not make investigation respecting such authority, especially where the name of the owner is not disclosed.   (Page 632.)

5. PRINCIPAL AND AGENT—UNAUTHORIZED ACTS—LIABILITY OF AGENT TO THIRD PERSON.   Where an agent undertakes to act for a principal without authority, or exceeds his authority, even though in good faith, he is liable to the person with whom he contracts for the damages sustained because of such want of authority.[2] (Page 633.)

6. PRINCIPAL AND AGENT—UNAUTHORIZED CONTRACT BY AGENT—LIABILITY OF AGENT TO THIRD PERSON.   An agent for the sale of land, who placed the purchaser in possession under a contract which he had no authority to make, is liable to the purchaser for the money paid on the purchase price, with interest thereon, the

[1] Peay v. Salt Lake City, 11 Utah  342.

value of improvements made on the premises, the costs and expenses incurred in defending ejectment against him, and the loss of his bargain, which is the difference between the contract price and the market value of the property, less the value of the improvements at the time the judgment in ejectment was rendered.2 (Page 634.)

7. PRINCIPAL AND AGENT—UNAUTHORIZED CONTRACT BY AGENT—LIABILITY OF AGENT TO THIRD PERSON. Where the agent for the sale of land placed the purchaser in possession under a contract he was unauthorized to make, and afterward induced the purchaser to borrow the amount of the deferred payments, representing that if such amount be tendered the owner would accept it, on the refusal of the owner to accept the amount and eviction of the purchaser, the agent is liable for the reasonable cost of procuring the money, but he is not liable for the amount of the judgment on eviction awarded the owner for the use of the premises. (Page 636.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action for breach of contract by Joseph H. Roberts and Hattie Roberts against Walter G. Tuttle, Sereno B. Tuttle, and Marcellus B. Woolley, doing business as Tuttle Brothers.

Judgment for plaintiffs for a part only of their claim. They appeal.

REVERSED.

*Stephens, Smith & Porter* for appellants.

*Howat & Macmillan* for respondents.

APPELLANTS' POINTS.

It seems to be well settled by the authorities that in case of doubt as to the intention of the parties to a contract, or any uncertainty in its terms, the interpretation which the parties, by their acts under their contract have practically given, it will have weight, and it may be controlling, and such constructions will generally be adopted by the courts in giving effect to its provisions. (*Stewart v. Pierce,* 89

2 Dunshee v. Geoghegan, 7 Utah 113.

N. W. 234; *Fiscus v. Wilson,* 104 N. W. 856; *Paxton v. Smith,* 59 N. W. 690; *School District v. Davis* [Neb.], 107 N. W. 842.)

The construction which the parties give to a contract prevails where the language used will reasonably allow such construction. (*Kennedy v. Lee,* 82 Pac. 257; *Keith v. Co.,* 68 Pac. 598.)

And where the obligation is not expressly provided, but arises by implication or legal inference, the implication or inference can be successfully rebutted by the uniform conduct of the parties at variance with such inference. (*Thomas v. Ry. Co.,* 81 Fed. 911; *Dist. of Columbia v. Gallagher,* 124 U. S. 505; *Topliff v. Topliff,* 122 U. S. 121; *Kentucky Dist. v. Lillard,* 160 Fed. 34; *Columbus Ry. Co. v. Penn. Co.,* 143 Fed. 757; *Manhattan Life Ins. Co. v. Wright,* 126 Fed. 82; *Keith v. Electrical Co.,* 68 Pac. 598; *McLean Co. v. Bloomington,* 84 N. E. 625; *Reissner v. Oxley,* 80 Ind. 580; *Vermont & Canada R. R. Co. v. Vermont Cent. Ry. Co.,* 34 Vt. 1; *Mitan v. Roddan* [Cal.], 84 Pac. 145; *Carroll v. Drury* [Ill.], 49 N. E. 311.)

The rule against parol evidence does not apply when it appears from the circumstances, and the object and intent of the parties that the contract is not complete. (9 Enc. of Ev., 347; *Winter v. Freedman,* 97 N. Y. Supp. 733.)

If the plaintiffs ar allowed to recover damages in this action their right to recover is based upon the breach of the defendants' warranty of authority in assuming to act as agents of Mrs. Denny, and it rests upon such well-settled principles that we will only cite this court to a few of the authorities. (Story on Agency, secs. 263, 264, 266, 267, 269; Mechem on Agency, secs. 541, 545; 1 Sutherland on Damages, page 140; 3 Sutherland on Damages [2d Ed.], sec. 797; *White v. Madison,* 26 N. Y. 117; *Farmers' Trust Co. v. Floyd,* 12 L. R. A. 346.)

### RESPONDENTS' POINTS.

The evidence of the prior negotiations was properly stricken out, for when the parties signed the instrument, all

the prior negotiations and representations became merged in that instrument and it is presumed to embrace such of the agreements as were ultimately intended to become parts of the contract. (*Bast v. Bank,* 101 U. S. 93, 95, 96; *Union Selling Co. v. Jones,* 128 Fed. 672; *Martin v. Berens,* 67 Pa. St. 463; *Bernhart v. Riddle,* 29 Pa. St. 96.)

Where a receipt is contractual in its nature and is unambiguous, it may not be varied or explained by parol evidence. (*Cohen v. Jackaboice* [Mich.], 59 N. W. 665, 666; *Stapleton v. King,* 33 Iowa 29; *Thompson v. Williams* [Kan.], 1 Pac. 47; *Vaughan v. Mason* [R. I.], 50 Atl. 390, 391; *McGregor v. Bugbee,* 15 [Vt.] 734, 736; *Hinckley v. R. R. Co.,* 56 N. Y. 429, 432; 17 Cyc. 532, 633, note 98; *Marks v. Mill Co.,* 43 Iowa 146, 148 and cases.)

A contract which public policy requires to be in writing cannot be changed or modified by parol. (*Thompson v. Thompson* [Minn.], 71 N. W. 543, 544; *State v. Stevenson,* 52 Iowa 701; *Sykes v. People* [Ills.], 19 N. E. 705; *Teal v. Bilby,* 123 U. S. 572; *Seaman v. O'Hara,* 29 Mich. 66.)

The more generally received doctrine as respects contracts required to be in writing by the statute of frauds in contradistinction to other classes of contracts is that the whole agreement must be reduced to writing. It cannot be part in writing and part in parol, and parol evidence is not admissible to vary, contradict or add to written contracts of this character. (*Heisley v. Swanstrom* [Minn.], 41 N. W. 1029, 1030; 1 Chitty on Contracts, 154; 1 Addison on Contracts, 201; Brown on Statute of Frauds, secs. 411, 414 *et seq.*; *Dana v. Hancock,* 30 Vt. 616; *Abell v. Munson,* 18 Mich. 306.)

The rule of practical construction of the parties to the contract only applies where the contract by its terms is indefinite and then only such construction as was placed on it prior to the dispute. (*Ry. v. Blackman* [Minn.], 47 N. W. 172, 173; 9 Cyc. 590; *Schwab v. Baremore* [Minn.], 104 N. W. 10, 11; *Cold Blast, etc., Co. v. Kansas City Bolt Co.,* 114 Fed. 77; *Railway Co. v. Bagley,* 60 Kan. 424, 431, 56

Pac. 759; *Woolsey v. Ryan*, 59 Kan. 601, 54 Pac. 664; *Davie v. Mining Co.*, 93 Mich. 491, 53 N. W. 625, 24 L. R. A. 357; *Campbell v. Lambert*, 36 La. Ann. 35, 51 Am. Rep. 1; *Turnpike Co. v. Coy*, 13 Ohio St. 84; *Stensgaard v. Smith*, 43 Minn. 11, 44 N. W. 669, 19 Am. St. Rep. 205.)

On the refusal of Mrs. Denny to convey, of course Tuttle Bros. could not give plaintiffs a "marketable title," therefore all plaintiffs were entitled to under this agreement was their money back with interest. This they got. (*Schwab v. Barimore* [Minn.], 104 N. W. 10; *Mackey v. Ames*, 16 N. W. 541; *Dana v. Investment Co.*, 44 N. W. 55; *Joslyn v. Schwend*, 88 N. W. 410.)

Where the vendor without fraud is unable to make a good title, the measure of damages is the purchase price paid, with interest, and the expenses of investigating the title. (29 Am. & Eng. Ency. L., p. 724, N. 10; *Sawyer v. Warner*, 36 Iowa 333; *Stewart v. Noble*, 1 Greene 26; *Sween v. Steele*, 5 Iowa 352; *Hammond v. Hannin*, 21 Mich. 371; *Dunnick v. Sharp*, 7 Mo. 71; *Gerbert v. Congregation*, 59 N. J. L. 160; *Margraf v. Muir*, 57 N. Y. 155; *Northbridge v. Moore*, 118 N. Y. 419; *Atwood v. Walker*, 179 Mass. 514; *Bitner v. Brough*, 11 Pa. St. 127; *Burk v. Terrell*, 80 Pa. St. 413; *Roberts v. McFaddin*, 74 S. W. 105; *Stewart v. Pennis*, 100 Va. 612; *Hall v. Delaplaine*, 5 Wis. 206.)

### STATEMENT OF FACTS.

The plaintiffs brought this action against the defendants to recover damages resulting from an alleged breach of an implied warranty of their authority as agents.

It is alleged in the complaint: That one Isabel L. Denny, a resident of Beaver, Beaver County, Utah, was, and still is, the owner of a certain house and lot on Sixth Avenue, in Salt Lake City, Utah. That defendants were co-partners doing business under the firm name and style of Tuttle Bros., as real estate agents and brokers. That they pretended to act as the duly authorized agents of the owner, and, without disclosing their principal, falsely represented to plaintiffs

that they had and possessed full authority to enter into a contract for the sale of the property, and to put plaintiffs into immediate possession thereof, for the sum of $2650, payments to be made as follows: Three hundred dollars cash down, and the balance in installments of twenty dollars per month with seven per cent interest; that plaintiffs agreed to said terms, and on February 13, 1905, paid defendants three hundred dollars, and thereupon the plaintiffs and the defendants made, executed, and delivered to each other a memorandum in writing in words and figures as follows:

"Received of J. H. Roberts and Hattie Roberts $300.00, the same being a forfeit payment as evidence of good faith on the part of said J. H. Roberts and Hattie Roberts, made to secure and apply on the purchase of No. 617 6th St., Salt Lake City, and 3x10 rods, providing Tuttle Bros. furnish good title to said property, for not exceeding $2,650.00, twenty-six hundred and fifty dollars, on the following terms of payment, to wit: $300.00 cash in hand paid and the balance in monthly installments of $20.00 per month, with seven per cent. interest.

"The title to said property to be a marketable one, and papers to be made in name of J. H. and Hattie Roberts and ready at office of Tuttle Bros. not later than Feb. 30, 1905, or this payment to be refunded.

"[Signed]          TUTTLE BROS.,
"Per C. E. MONRO.

"I hereby agree to carry out and fulfill the terms and agreements herein specified, subject to conditions named.

"[Signed]          J. H. ROBERTS.
"HATTIE ROBERTS."

That defendants placed plaintiff in possession of said premises, and that each month thereafter, to and including July, 1906, plaintiffs paid to defendants monthly installments of $20 each, as provided in said contract, on or about the 1st day of each month, to the amount of $340 and all of said payments were accepted by defendants as payments upon the purchase price and in compliance with the terms of the contract, and that all of said sums (aggregating $640) the defendants still retain.

That upon taking possession, plaintiffs made certain necessary permanent improvements and repairs upon said premises to the value of $250, and the necessity of making said improvements and repairs was known to defendants.

That in May, 1905, defendants, still falsely claiming to be the duly authorized agents of the said Isabel L. Denny, falsely represented to plaintiffs that, if they would borrow the balance of the purchase price and tender the same to the defendants as agents, Mrs. Denny would accept the same, and be obligated to convey the property to plaintiffs; that they borrowed the money at an expense of $35, and tendered the balance of the purchase price to defendants, and that defendants, well knowing that they were without authority to act for Mrs. Denny, refused to accept the money so tendered.

That in May, 1905, Mrs. Denny demanded possession of the premises, and on July 11, 1905, commenced an action in ejectment and for damages against plaintiffs.

That plaintiffs gave defendants notice of the action, and demanded that they defend the same, which they refused to do, but represented that plaintiffs had a valid contract of sale, and that defendants had ample and valid authority to make the same, and advised plaintiffs to hold possession of the property and defend the action; that plaintiff did hold possession of the premises and employed attorneys to defend the action, and incurred costs and expenses in defending the same to the amount of $178; that a judgment was rendered in favor of Mrs. Denny and against these plaintiffs for the possession of the premises, and for $424.90 damages, and that in accordance with the judgment plaintiffs vacated the property.

That plaintiffs attempted, under chapter 7, Rev. St. 1898, to recover the costs of the improvements which they had made upon the premises, but failed.

That plaintiffs have lost and been deprived of the benefits of their contract of sale, to their damage in the further sum of $1,350.

In the answer it was admitted that defendants Walter G. Tuttle and Sereno B. Tuttle were, at all times mentioned in the complaint, copartners doing business as Tuttle Bros., but it is denied that Marcellus S. Woolley was or is one of the members of the firm of Tuttle Bros. Defendants also admit

in their answer "that plaintiffs entered into said agreement in good faith, and paid the said forfeit sum of three hundred dollars, and further admit that thereafter, until and including the month of July, 1906, the plaintiffs paid defendants twenty dollars on or about the 1st of every month until the same aggregated the sum of three hundred and forty dollars." It is further alleged in the answer that at the time plaintiffs offered to purchase the property "they well knew that these defendants were not the owners of said property, and were not possessed with a marketable title thereto, and were not in a position to furnish such title thereto, and were not in a position to furnish such title to the plaintiffs unless the owner of said property should accept plaintiffs' said offer, and be willing and able to convey such title to plaintiffs; that with such knowledge, . . . and knowing that their offer might not be accepted by said owner, or that plaintiff and said owner might not agree upon the terms of sale, said contract, which is set out in said complaint, . . . was entered into; . . . that at the time of executing the said contract it was understood and agreed between the parties that said contract or receipt was simply a preliminary matter, and that when the terms of the sale, in case the said owner and said plaintiffs should agree, should be determined, they were to be embodied in a written contract between said Denny and the plaintiffs, but that said contract set out in said complaint did not, and was not, by the parties intended to bind these defendants to furnish to plaintiffs a marketable title to said property; that defendants communicated said offer to said owner, and she agreed with these defendants to accept the same, and authorized them to communicate such acceptance to plaintiffs, which acceptance was afterwards by these defendants communicated to plaintiffs; that thereafter, and before a written contract for the sale of said property was executed by said Denny and said Roberts, a dispute arose between them as to the manner in which the interest upon the deferred payments of said purchase price should be paid, the plaintiffs, in violation of the plain terms of said contract, insisting

that the twenty dollars per month mentioned in said contract should be inclusive of interest, and the said Denny insisting that the payments should be twenty dollars per month upon the purchase price, and that in addition thereto these plaintiffs should pay monthly the interest due upon the deferred payments; that on March 1st, and before said dispute arose, and before the first installment was due under said contract, the plaintiffs paid to these defendants twenty dollars as the first installment thereof, but that before the second installment was due these defendants notified the plaintiffs that said Denny refused to sell said property, or execute a contract for the sale of the same, unless plaintiffs would pay twenty dollars per month upon the balance of the purchase price, and also the interest monthly with the said twenty dollars per month, which plaintiffs refused to do, and by reason thereof these defendants were unable to procure from said Denny a contract for the sale of said property, or a maketable title thereto, to be conveyed to the plaintiffs, and thereupon said contract became and was terminated and at an end, and these defendants thereupon offered to repay to the plaintiffs the said sum of three hundred dollars forfeit money, together with the twenty dollars which had been by the plaintiffs paid to the defendants; . . . that plaintiffs refused to accept, and insisted upon defendants keeping, said sum of three hundred dollars, together with said first installment of twenty dollars, and from time to time, until the monthly payments aggregated the amount of three hundred and forty dollars, plaintiffs insisted upon paying the sum of twenty dollars per month to these defendants, requesting defendants to accept the same, all at plaintiffs' risk." It is further alleged that defendants have not repaid the money because they were served with a writ of garnishment in the action brought by Mrs. Denny and against plaintiffs, referred to in plaintiffs' complaint. Defendants deny that plaintiffs have been deprived of the benefits of their contract to their damage in the sum of $1350, or in any other sum, or at all.

In support of the allegations of their complaint the plain-

tiffs introduced oral and certain documentary evidence. Joseph H. Roberts, one of the plaintiffs, testified that in the early part of February, 1905, he entered into negotiations with defendants Tuttle Bros. for the purchase of the property in question, and on February 13, 1905, the contract or memorandum referred to, containing a general statement of the terms of the sale, was executed; that at the time this agreement was signed it was understood that a contract containing more fully the terms and conditions of the sale would thereafter be signed and executed by plaintiffs and the owner of the property; that at the time the agreement referred to was signed, the plaintiffs knew that Tuttle Bros. did not own the property, but did not know who the owner was; that the name of the owner was not disclosed to plaintiffs until they received an abstract of title to the property about March 1, 1905; that they took actual possession of the property February 15, 1905, and immediately thereafter expended about two hundred dollars "in making necessary repairs and improvements thereon; that he had had no conversation or communication of any kind with Mrs. Denny, and that the transaction was had exclusively with Tuttle Brothers; that in May, 1906, he received a notice from Mrs. Denny through her attorney to vacate the premises; that up to this time he had made the monthly payments of twenty dollars each on the purchase price of the property, which were accepted by Tuttle Bros. without objection, and receipts were given therefor as the payments were made (the receipts were introduced in evidence); that he was not advised of any dissatisfaction on the part of Mrs. Denny until he received the notice to vacate; that he handed the notice to Tuttle Bros., and they stated to him that: "There is nothing to it, nothing but a bluff. You keep right along as you have been doing and everything will come out all right." That in June, 1906, Mrs. Denny commenced an action in ejectment in the district court of Salt Lake county against plaintiffs to recover possession of the premises, and summons was duly served on them; that Tuttle Bros. refused to defend or assist in the defense of the action, al-

though requested so to do; that judgment in said action was rendered June 30, 1906, in favor of Mrs. Denny and against plaintiffs for the possession of said premises and for $412.50 damages, and costs. The judgment roll in this action (*Denny v. Roberts*) was offered and admitted in evidence; also the petition filed on behalf of defendants in said action, under sections 2021, 2028, c. 7, Rev. St. 1898, to be allowed for their improvements as claimants, and the decision of the court dismissing the same.

It appears from the record that soon after the agreement or memorandum referred to was signed, and the three hundren dollars mentioned therein as forfeit money was paid to Tuttle Bros., and plaintiffs had taken possession of the property, a dispute arose between Mrs. Denny and Tuttle Bros. as to the manner in which the interest on the deferred payments should be paid, and a somewhat protracted correspondence was carried on between them over this matter. As much of this correspondence, when considered in connection with other correspondence carried on between them, has a material bearing upon and tends to elucidate the points involved, we shall copy somewhat copiously from it. The correspondence, so far as material here, is as follows:

"Beaver, Utah, Feb. 9, 1905. Tuttle Bros., Salt Lake City Utah—Gentlemen: I beg to advise you that I have concluded to sell my property for the sum you named, viz: $2500, with $300 down, and I think I should get $300 per annum, payable in monthly installments of $25. Kindly secure this amount for me if possible. I remain, Yours truly, Isabel Denny."

Tuttle Bros. to Denny:

"Salt Lake City, Utah, Feb. 13, 1905. Dear Madam: We were able to hold our customer over until to-day, when we closed the deal for your home, as per terms and agreement. . . . Before paying all the money the title, of course, will have to be examined. . . . After the same is examined we will send you papers to execute with a copy of same for your retention."

Tuttle Bros. to Denny:

"Salt Lake City, Utah, Feb. 23, 1905. Dear Madam: We inclose herewith contracts for the sale of your residence in duplicate

for you to sign. . . . Considerable over a hundred dollars has already been expended in the improvement of the property, by the repairs in plumbing, electric fixtures, smoothing floors, fixing grate, putting in glass, and in decorating. Mr. and Mrs. Roberts have moved into the premises. . . . The buyers have been constantly at work repairing and improving the property, and it seems as if there was no end to it. . . . When the water was turned on a leak was discovered in one of the lead pipes—that tore the ceiling off one of the rooms. Several other such casualties have made life a burden to us for some days past. . . . Please sign papers and return to us by return mail."

## Denny to Tuttle Bros.:

"Feb. 26, 1905. Gentlemen: I am in receipt of contract in duplicate providing for the sale of my property. Now I have no desire to delay the sale or be at all disagreeable in the matter, but to me the clause providing for the payments does not seem perfectly clear, especially regarding interest. I would like to have the clause providing for the payments to read as follows, to wit: Three hundred dollars ($300) down upon the execution and delivery of this contract, twenty (20) dollars on the 13th day of March, 1905, and twenty (20) dollars or more and also interest on the deferred payments at the rate of seven per cent. per annum on or before the 13th day of each and every month until the total purchase money as above set forth is paid."

## Tuttle Bros. to Denny:

"Salt Lake City, Utah, Mar. 9, 1905. Dear Madam: Your letter of the 26th ult. has at least had the effect of quieting the demands of Mr. Roberts for more improvements, but has in no way had any effect in changing the status of the deal. Our understanding with you, when here, was that the payment of $20 per month was inclusive of interest. . . . Our conversation with you over the telephone, in which we stated we could not get more than $20 a month from the buyer, was to the same effect and on the strength of it we entered into a contract for Mr. Roberts according to the conditions embodied in the contract we sent you in duplicate to sign. We would have been very glad to have changed the conditions so as to make the payments $20 and interest, but it was too late. . . . We don't believe there was any misunderstanding between us. . . . The purchasers paid on the second inst. their first monthly installment of $20, which we have on hand for you. They are continuing their expenditures upon the property, and in a short time will make a very comfortable home of it. . . ."

36 Utah—40

Denny to Tuttle Bros.:

"Beaver, Utah, March 14, 1905. Gentlemen: Your letter of the 9th came duly to hand and I am somewhat surprised that you had arrived at such an unreasonable conclusion regarding the payments. . . . I am making a great sacrifice in accepting $2650 for the place, and must insist on the proposition as originally made between us— that is for $20 per month plus 7 per cent. interest per annum on the deferred payment, .and beg to inform that I will not execute any contract whatever to sell until this is made clear and definite."

Tuttle Bros. to Denny:

"March 25, 1905. Dear Madam: Aside from the 'understanding' or 'misunderstanding' (whichever it is your pleasure to consider) the awkward predicament that confronts us is what to do in the premises. Mr. Roberts has expended in the neighborhood of $250 upon improvements, is in possession of the property, and refuses to change the terms of the contract as understood by him when he made his payment. He explains the transaction to us the same as he did at the time he made his proposition to purchase. At that time he explained that until he disposed of some of his other real estate holdings it would be impossible for him, besides making the improvements on the property he contemplated to make, more than twenty dollars monthly payments. . . . We know of no way in which either you or we can be relieved of this obligation to Mr. Roberts, and we therefore submit to you the above in the hope that it will be received in the way it is intended."

Denny to Tuttle Bros.:

"Beaver, Utah, March 30, 1905. Gentlemen: Yours of the 25th to hand. . . . I never authorized Mr. Roberts to make any improvements on the place. I gave your Mr. Munroe my acquiescence to expend ten dollars—his own estimate—to make the necessary repairs and no more. I never met Mr. Roberts and as to what this understanding about the place was I do not know. I was doing business with your firm through Mr. Munroe, and if you have a purchaser in this Mr. Roberts it must be on the terms agreed upon between us, and Mr. Roberts has no right in or upon the place until the matter is concluded on the original terms. I wish it distinctly understood that he has nothing at all to do with me in this matter and I will not recognize him at all in the deal. . . . I stand ready and willing to sign up on the terms first agreed on, and will not consider your other offer at all. If this is not suitable you can consider the deal off for good."

Tuttle Bros. to Denny:

"Salt Lake City, Utah, April 5, 1905. Dear Madam: We have conveyed the contents of your letter of the 30th ult. to Mr. J. H. Roberts, and he positively declines to call the deal off. . . . We feel that by closing the deal you would not in any way sacrifice any interest and we feel keenly the position Mr. Roberts is in."

Denny to Tuttle Bros.:

"Beaver, Utah, April 12, 1901. Gentlemen: I am in receipt of yours dated the 6th, wherein you state that you had conveyed the contents of my last letter to Mr. Roberts and that he positively declined to call the deal off. There is no deal on between Mr. Roberts that I am aware of and therefore is none to call off. Mr. Roberts is simply a trespasser upon my property, as he did not go there (if he is there now) with my sanction. And as you seem to be conveying the contents of my letters to him, just convey the contents of this one—to vacate the premises forthwith. . . . Seeing my terms of sale are not going to be complied with, I will now serve notice upon you that the deal is off entirely."

Tuttle Bros. to Denny:

"Salt Lake City, Utah, April 26, 1905. Dear Madam: It will be impossible for you at this time to declare the deal off for your Sixth street residence, as it has been sold to Mr. Roberts by authority of your written instructions. *As Mr. Roberts is now in possession of the property, has expended hundreds of dollars upon it, and has kept all his contracts, we must conclude that you are poorly advised at that end of the line.* It is impossible for us to declare the deal off for the reasons before stated, and *we must positively refuse to attempt such a thing, or order Mr. Roberts to vacate the premises."* (Italics ours.)

The proposed contract between Mrs. Denny and Roberts for the sale of the property in question, and which was prepared by Tuttle Bros. and forwarded by them to Mrs. Denny for her signature, provided that the terms of payment should be as follows: "Three hundred dollars down upon delivery of this contract; twenty dollars on the 13th day of March, 1905; twenty dollars or more on or before the 13th day of each and every month thereafter until all is paid inclusive of interests on all deferred payments at the rate of seven per cent per annum." In the case of *Denny v. Roberts,*

hereinbefore referred to, a writ of garnishment was served upon Tuttle Bros., and their answer thereto, which was admitted in evidence, recites in part as follows:

"Mr. Roberts paid us a deposit on the place of three hundred dollars, and has paid seventeen monthly installments since at twenty dollars each, $340. These sums were credited to Mrs. Denny on our books, for whom we acted as agents in the sale of her place. . . . After charging her account with certain items . . . left us in our possession $479.10 paid by Mr. Roberts on account of the above deal to comply with contract as agreed to by Mrs. Denny, and which we hold for Mrs. Denny. . . . We understand a judgment has been rendered against Mr. Roberts in this case, and this judgment is made for the purpose of dispossessing Mr. Roberts from his rightful possession of this place."

At the close of plaintiffs' case, on motion of defendants (they having, by permission of the court, reserved the right to make the motion), the court struck out all parol testimony of plaintiffs with reference to conversations "to the time or to the payments to be made," and all evidence with reference to the expenditures made by plaintiffs in repairing and improving the property while they were in possession, and the expenses and costs they incurred in defending the action in ejectment brought against them by Mrs. Denny, and the judgment of $412.50 rendered against them in said action, also all the correspondence and the other documentary evidence hereinbefore referred to; the court holding that there was "no element of damage recoverable by plaintiffs except the amount paid by them, together with interest from the time of payment." The court thereupon directed a verdict in favor of plaintiffs for the amount paid, with interest. To reverse the judgment entered on the verdict, plaintiffs have brought the case on appeal to this court.

McCARTY, J. (after stating the facts as above).

The first question to be determined is, What were the respective rights and obligations of appellants and defendants under the agreement signed by them, and which it set out in full in the foregoing state-

ment of facts? This agreement, among other things, provides that: "Tuttle Brothers furnish good title to said property for not exceeding $2650 on the following terms of payment, to-wit, three hundred dollars cash in hand paid, and the balance in monthly installments of twenty dollars per month with seven per cent interest." It is contended by counsel for respondents that, under the agreement, appellants were required to pay twenty dollars per month on the principal of the purchase price, and in addition thereto to pay monthly the interest on all deferred payments, and, not having done so, they defaulted, and are therefore only entitled to recover the amount paid on the purchase price with legal interest. On the other hand, appellants claim that up to the time the judgment of eviction was rendered against them, and they were thereby dispossessed of the property, they performed every duty required of them by the terms of the contract, and that they are not only entitled to recover the money paid by them on the purchase price, but are also entitled to recover for all losses sustained by them because of respondents' want of authority from the owner of the property to make the contract in question. Under the construction contended for by counsel for respondents appellants would have been required to pay $33.71 as the first installment, instead of twenty dollars as provided in the contract, and the same amount, less about 11 cents, as the second installment, and so on until the final payment was made, the amount of interest payable each month gradually growing less in proportion to the reduction made on the principal by the monthly payments. True, it may be said that by a strained construction the interpretation contended for by respondents' counsel might be given the contract, but we think the more fair and reasonable construction is that appellants were only required to pay twenty dollars per month on the balance of the purchase price, inclusive of interest (*Root v. Johnson*, 99 Ala. 90, 10 South. 293), and that the general rule of partial payments should apply in this case. This is the interpretation the parties themselves gave the contract, and seventeen monthly

installments of twenty dollars each were paid by appellants and accepted by respondents under this construction. In fact, the record conclusively shows that both appellants and respondents, from the time the contract was executed until the commencement of this action, intended to and did so construe it. Where parties to a contract, regarding which there may be doubt or uncertainty as to its proper construction, have, with knowledge of its terms, given it the same practical construction, and where, as in this case, they have by their acts given effect to such construction, the construction thus adopted will generally be adhered to by the courts in giving effect to its provisions. In 9 Cyc. 588, the general rule is stated as follows:

"Where the parties to a contract have given it a particular construction, such construction will generally be adopted by the courts in giving effect to its provisions. And the subsequent acts of the parties, showing the construction they have put upon the agreement themselves, are to be looked to by the court, and in some cases may be controlling."

Many cases are cited in the footnote in support of this doctrine. (2 Paige on Contracts, sec. 1126; Bishop on Contracts, sec. 412; *School District v. Davis,* 76 Neb. 612, 107 N. W. 842; *Stewart v. Pierce,* 116 Iowa 733, 89 N. W. 234; *Fiscus v. Wilson,* 74 Neb. 444, 104 N. W. 856; *Keith v. Electrical Co.,* 136 Cal. 178, 68 Pac. 598; *Kennedy v. Lee,* 147 Cal. 596, 82 Pac. 257; *Dist. of Columbia v. Gallaher,* 124 U. S. 505, 8 Sup. Ct. 585, 31 L. Ed. 526; *Topliff v. Topliff,* 122 U. S. 121, 7 Sup. Ct. 1057, 30 L. Ed. 1110; *McLean County Coal Co. v. City of Bloomington,* 234 Ill. 90, 84 N. E. 624.) Applying the rule as declared by these as well as many other authorities that could be cited, to the undisputed facts of this case, it necessarily follows that appellants were at no time in default, and therefore cannot be held to have breached the contract.

The next assignment of error discussed by the parties involves the question of the measure of damages which appellants are entitled to recover from respondents because of

the latter's inability to perform their part of the contract, which the record shows was due solely to their want of authority to sell the property on the terms therein specified. Appellants contend that they are not only entitled to legal interest on the $640 paid by them to the defendants on the purchase price, but are entitled to recover for the repairs and improvements made by them on the property, the amount of the judgment rendered against them in the eject-ment suit, mentioned in the foregoing statement of facts, the $178.60 expended by them in defending the suit, and for the loss of their bargain, and that the court erred in striking out the evidence offered in support of these ele-ments of damages and limiting the amount of their recovery to the $640 paid on the purchase price, and legal interest thereon. On the other hand, respondents contend that per-formance on their part was made conditional, and the extent of their liability, in case of nonperformance, was fixed by the following provisions of the contract, namely: "Provid-ing Tuttle Brothers furnish good title to the said property for not exceeding $2650, on the following terms of pay-ment, to-wit: Three hundred dollars cash in hand paid, and the balance in monthly installments of twenty dollars per month, with seven per cent. interest. . . . Title to said property to be marketable, . . . or this payment to be refunded." They then proceed to argue that, because Mrs. Denny refused to convey the property in accordance with the terms of the contract, to which she was not a party, and the making of which she did not authorize, they were there-fore unable to furnish appellants with a marketable title, and are thereby absolved from all liability except to repay (as liquidated damages) the money which they had re-ceived on the purchase price. We do not think the contract is open to this construction. The terms "good title" and "marketable title," as used in the contract, un-doubtedly refer to the record title, or chain of title, as shown by the public records, and not to respondents' author-ity or want of authority from the owner of the property to make the contract, and it is plain that it was not intended

that the repayment of the three hundred dollars forfeit money, with interest thereon, should be considered as liquidated damages for any and all losses that appellants might sustain because of respondents' want of authority to make the contract. We think a fair and reasonable construction of these provisions of the contract is that they were intended to give appellants a right to demand a marketable title to the property, and to refuse any title that might be tendered that was not marketable, and to relieve them from making any further payments on the property, and to entitle them to a repayment of the three hundred dollars forfeit money in case the record title should prove to be unmarketable. True, it may be said that if respondents had acted within the scope of their authority, and were unable to furnish appellants with a good title because of some defects in the chain of title, the only claim appellants would have under such circumstances would be for the money paid by them on the purchase price, with interest. But that is not this case. Appellants were furnished an abstract of title of the property soon after they went into possession, which was entirely satisfactory to them, and on the strength of this they in good faith made valuable improvements on the property, and paid seventeen monthly installments of twenty dollars each on the purchase price. The difficulty here is, while the record shows that respondents were authorized by Mrs. Denny to contract for the sale of the property on certain terms, they had no authority to make the contract in question, and they, in effect, admit in their answer that they had no such authority.

It is further argued in behalf of respondents that, as appellants were advised at the time they entered into the contract that respondents were not the owners of the property, but were acting as agents for another party (whose name was not disclosed) they acted with their "eyes open," and with the understanding that respondents might be unable to furnish a marketable title, and hence assumed the risks of the deal. While appellants must be deemed to have entered into the contract with the understanding that respondents might be unable to furnish a marketable title because of some

cloud or defect that might appear in the chain of title, and that respondents' promise to furnish a good title was subject to this contingency, they were not bound to take notice that the respondents in making the contract might be without authority to act from the owner of the property and make investigation respecting what authority, if any, respondents had to make the contract, and especially so in view of the fact that the name of the owner was not known to appellants until after the contract was entered into and they had taken possession of the property and paid a part of the purchase price. They had a right, under the circumstances, to assume, and to act upon the assumption, that respondents had authority from their principal to make the contract.

Furthermore, respondents contracted in their own names, and there is nothing in the agreement that even suggests that they were acting as agents for another party. Therefore, under all the authorities, they are personally liable thereon. Now, the rule as laid down by the great weight of authority seems to be that, where an agent undertakes to act for a principal without authority, or exceeds his authority, even though he in good faith, but erroneously, believes he has authority to act, he is responsible to the other contracting party for the damage he may sustain because of such want of authority.

Mechem, in his excellent work on Agency, sec. 550, says:

"Where the promise is made in the name of the principal and as his contract, the better opinion is that the agent cannot be held liable upon it, but only for the deceit or breach of warranty, even in the case of a written contract, where the assumed relation of agency appears upon the face of it. Some courts have, indeed, manifested a disposition in this latter case to reject the words referring to the alleged principal as mere surplusage, and to hold the agent liable upon the remainder as upon his own contract. This, however, as has been well said, is rather to make a new contract for the parties than to construe the one which they have made for themselves.. *Where, however, the agent, in undertaking, without authority, to bind another, used apt words to bind himself, there is abundant reason and justice in holding him liable upon the contract itself as made.*" (Italics ours.)

In 3 Sutherland on Damages (3d Ed.), the author, in discussing the measure of damages in such cases says, at section 798:

"The same sum which the agent without authority had agreed for in behalf of his solvent principal will be the sum recoverable against him, or as it has been otherwise expressed, "the person who contracts with the agent is entitled to be put in the same position as if the representations' made by the agent concerning his authority were true. In other words, where upon an executed consideration a certain sum would be due from the supposed principal if he had been bound by the contract and solvent, that sum is recoverable from the unqualified agent."

And in section 797 of the same work the author says:

"The damages proper include the value of the property sold, or of the services rendered by the procurement of the agent unqualified to bind the supposed principal; and, if an abortive suit has been prosecuted on the contract on the faith of its being binding against such principal, the costs of it are recoverable as part of the damages."

To the ame effect are the following authorities: *Pumpelly v. Phelps,* 40 N. Y. 59, 100 Am. Dec. 463; *Hopkins v. Lee,* 6 Wheat. 109, 5 L. Ed. 218; *White v. Madison,* 26 N. Y. 117; *Weare v. Gove,* 44 N. H. 196; *Farmers' Co-op. T. Co. v. Floyd,* 47 Ohio St. 525, 26 N. E. 110, 12 L. R. A. 346, 21 Am. St. Rep. 846; *Dunshee v. Geoghegan,* 7 Utah 113, 25 Pac. 731; Story on Agency (9th Ed.), secs. 263, 267, 269; 1 Parsons on Contracts (7th Ed.), secs. 65, 67, 69; 2 Page on Contracts, sec. 975; 1 Am. & Eng. Ency. L. 1124, 1125; 31 Cyc. 1545, 1551, 1555. We also invite attention to the notes to *Thompson v. Davenport,* 3 Smith's Leading Cases (9th Ed.), 1648, wherein some of the questions here involved are elaborately discussed and numerous cases cited. *Hopkins v. Lee, supra,* was a case in which the measure of damages in this class of cases was to some extent involved, and in the course of the opinion it is said:

"The rule is settled in this court that, in nan action by the vendee for a breach of contract by the vendor, for not delivering the article, the measure of damages is its price at the time of the breach. The price, being settled by the contract, which is generally

the case, makes no difference, nor ought it to make any; otherwise the vendor, if the article have risen in value, would always have it in his power to discharge himself from his contract, and put the enhanced value in his own pocket. Nor can it make any difference in principle whether the contract be for the sale of real or personal property, if the lands, as in the case here, have not been improved or built on. In both cases the vendee is entitled to have the thing agreed for, at the contract price, and to sell it himself at its increased value. If it be withheld, the vendor ought to make good to him the difference."

In this case the record shows that while respondents were authorized by Mrs. Denny to sell the house and lot mentioned, they had no authority to sell it on the terms specified in the agreement under consideration. Therefore appellants, under the well-established rule as declared by the foregoing authorities, were entitled to recover, for the money paid by them on the purchase price, with legal interest thereon, the value of the improvements made by them on the premises, the costs and expenses which they incurred in defending the ejectment suit mentioned, which the parties have stipulated to be $178.60, and for the loss of their bargain. The measure of damages for the loss of their bargain, under the peculiar facts and circumstances of this case, would be the difference between the contract price ($2650) and the market value of the property (less the value of the improvements referred to and pleaded as an item of damage) at the time the judgment of eviction was rendered against appellants; this being the date (June 30, 1906) when it was determined that respondents had no authority to sell the property on the terms specified in the contract and it became apparent that there could be no performance on their part. (*Dunshee v. Geoghegan, supra; Close v. Crossland,* 47 Minn. 498, 50 N. W. 694; *Hendrickson v. Back,* 74 Minn. 90, 76 N. W. 1019; 3 Sutherland on Damages [3d Ed.], sec. 798.)

Appellants offered evidence to show that between the months of May and July, 1905, and after they had paid several monthly installments on the property, they, at the solicitation of respondents, borrowed the balance of the purchase

price at an expense of $35, and tendered the same to respondents, and that respondents refused to accept the same. The ruling of the court in sustaining objections made to the admission of this evidence is assigned as error. Ordinarily damages of this character are not recoverable because of their remoteness. In this case, however, as we have observed, appellants predicate their right to recover upon the ground that respondents had no authority to make the contract in question, or to sell the property on the terms therein mentioned. And it is alleged in the complaint that, after appellants had paid part of the purchase price, and respondents had put them into possession of the property, they borrowed the money at the request of, and upon the representations made by, respondents "that if they (appellants) should borrow the balance of the purchase price and tender the same to defendants as agents, said Denny would accept the same and . . . convey said property to plaintiffs;" that appellants relying upon the representations so made by respondents, borrowed the balance of the purchase price at a cost of thirty-five dollars and tendered the money to respondents, who refused to accept the same, and that the cost of obtaining the money was "a useless and unnecessary expense" to appellants. Now, if, as alleged in the complaint, respondents represented to appellants that Mrs. Denny would be obligated to convey the property to appellants provided she were tendered the balance of the purchase price, and requested appellants to borrow the money for that purpose, and appellants, in pursuance of such representations and request, borrowed the money and tendered it to respondents, and they refused to accept the same, we know of no reason why appellants are not entitled to recover the reasonable cost and expense, if any, which they incurred in obtaining the loan. Under the peculiar facts and circumstances of this case we think this was a proper element of damages. The proof offered by appellants on this point had a direct bearing upon, and tended to prove, this item of damages, and the ruling of the court in refusing to admit it was error. We are of the opinion, however, that, under

the pleadings and evidence, appellants are not entitled to recover for the item of $412.50, the amount of the judgment rendered against them in the ejectment suit for the use of the premises occupied by them, and for which they received the benefit.

The judgment is reversed, with directions to the trial court to grant a new trial and to proceed in accordance with the views herein expressed; costs of this appeal to be taxed against respondents.

STRAUP, C. J., and FRICK, J., concur.