## TRUCKER SALES CORPORATION v. POTTER et al.

No. 6553.   Decided May 10, 1943.   (137 P. 2d 370.)

See 17 C. J. S., Contracts, sec. 325; 12 Am. Jur., 787.

*Henry Ruggeri,* of Price, and *Grant H. Bagley,* of Salt Lake City, for appellants.

*Mulliner, Prince & Mulliner,* of Salt Lake City, for respondent.

WADE, Justice.

Plaintiff, the Trucker Sales Corporation, respondent here, brought this action against the defendants, William M. Potter and Mike Gambero, doing business as the Lone Pine Coal Company and George A. Schultz and Earl N. Radcliff to obtain a judgment for money which it claimed was owing to it under a written contract. Plaintiff was awarded judgment and defendants, except William M. Potter, bring this appeal.

George A. Schultz and Earl N. Radcliff, being the owners of certain coal mining property, on July 1, 1938, leased it for a term of ten years to William M. Potter and Mike Gambero at a royalty of fifteen cents per ton of all coal mined therefrom. Potter and Gambero formed a partnership which they called the Lone Pine Coal Company and on October 1, 1938, entered into a written contract with plaintiff, which will hereinafter be called Exhibit "A," whereby plaintiff was

appointed Sales Agent for a ten year period, for all coal sold by the partnership, at a commission of twenty-five cents per ton. On the same day, Schultz and Radcliff, owners of the mining property, entered into a written contract which will hereinafter be referred to as Exhibit "B," to which Exhibit "A," was attached and made a part thereof, whereby Schultz and Radcliff affirmed plaintiff's appointment as Sales Agent and agreed that they and their interests shall be bound by all the terms of Exhibit "A" as effectively as though they themselves had been parties to said agreement.

The trial court placed the following construction on these contracts: (1) That as long as it actively solicited business for and used every reasonable means to dispose of the partnership's total output of coal the plaintiff was entitled to its twenty-five cent per ton commission on every ton sold by the partnership, even though the sale was not made by plaintiff nor as a result of its efforts; (2) that plaintiff was entitled to its twenty-five cent commission on every ton of coal mined and sold by the partnership, even though such coal was taken from beyond the boundary lines of the property described in Exhibit "A"; and (3) that the defendants Schultz and Radcliff are primarily liable to plaintiff for all commissions owing to it under Exhibit "A." If these constructions are correct, then there was ample evidence to sustain the court's decision, but if either of them is not correct then the case must be reversed.

On the first proposition appellants contend that the following facts clearly express the intention that plaintiff was only to receive a commission on the coal sold as a result of its efforts: (1) That plaintiff is characterized in the contract and promised to act as "Sales Agent" for all the coal produced by the partnership, and not merely as "solicitor" or "employee"; (2) that plaintiff promised "to actively solicit business" and "use every reasonable means to dispose of Producer's output of coal"; (3) that if a certain amount of coal per day was not sold plaintiff agreed to

purchase the unsold portion thereof; (4) that sales tickets were to be issued to each purchaser, and a duplicate thereof sent to plaintiff; and (5) that producers were required to keep the price of coal down, and notify plaintiff of any change in price. In what way these facts express such an intention does not appear as they seem to be as consistent with plaintiff's contention as with the contention of the appellants.

On the other hand, the court's construction is that given the contract by the parties themselves. From October 1, 1938, when the contract was entered into, until August 1941, almost three years, the partnership furnished plaintiff with duplicate slips and paid without question plaintiff's commission on all coal sold. Appellants first raised this question on October 6, 1941. Nothing could show the intention of the parties more clearly than the interpretation they themselves place upon a contract. It is well settled in this state that where the parties to a contract, with full knowledge of the terms thereof, by their actions before any controversy has arisen, place upon it a construction which is not contrary to the usual meaning of the language used the courts will follow that construction. *Fowers* v. *Lawson*, 56 Utah 420, 191 P. 227; *Roberts* v. *Tuttle*, 36 Utah 614, 105 P. 916; *Titton* v. *Sterling Coal & Coke Co.*, 28 Utah 173, 77 P. 758, 107 Am. St. Rep. 689; *Snyder* v. *Fidelity Savings Association*, 23 Utah 291, 64 P. 870; *Woodward* v. *Edmonds*, 20 Utah 118, 57 P. 848; *Peay* v. *Salt Lake City*, 11 Utah 331, 40 P. 206.

The same result is reached from the language of the contract, Exhibit "A" which provides:

"1. That the said Sales Agent shall be and is hereby constituted the Sales Agent of all coal mined and sold by the Producers, to act for the Producers in all matters pertaining to the sale of coal wherever and to whomsoever the said coal is sold.

"2. That the said Sales Agent agrees to receive and the Producers agree to pay to the Sales Agent the sum of Twenty-five (25c) cents per ton as a sales commission on all grades, classes and sizes of coal, irrespective of the place of sale or the place of loading or whether the

said sales are made for cash, credit or trade, on all coal sold by the producer. * * *

"8. It is agreed that the Sales Agent will actively solicit business for the producers and use every reasonable effort to dispose of the Producers total output of coal. * * *"

In the first paragraph plaintiff is expressly made the Sales Agent of all coal mined and sold by the producers. There is no limitation to such coal as the plaintiff shall individually sell, or to such coal as plaintiff shall, by its efforts, induce the buyer to purchase. In the second paragraph it expressly provides that the plaintiff shall receive a commission on "all coal sold by the producers," thereby expressing the intention that the commission should be paid on all coal sold, rather than limiting it to coal sold as a result of plaintiff's efforts. In paragraph 8 the plaintiff's duties were stated to be to "actively solicit business for the Producers." Thus providing that plaintiff's duties are to solicit business rather than to transact the business of making sales. The only thing that expresses anything to the contrary is the statement in the first paragraph, where plaintiff is authorized to "act for the Producers in all matters pertaining to the sale of coal," which suggests that plaintiff was to transact the business of each sale. That this suggestion was not the intention of the parties is clearly shown by their actions as above detailed; in fact, the defendants have never yet suggested that plaintiff was required to have a man at the mine to transact the details of each sale. In view of the construction placed on this contract by the parties thereto, and the language of the contract itself, the court did not err in holding that plaintiff was entitled to its commission on every ton of coal sold by the defendants, whether or not the purchaser was induced to buy as a result of the efforts of the plaintiff. In fact, it is hard to see how any other construction could be placed thereon.

As to the second construction of the contract, appellants say that since the contract Exhibit "A" recites that the producers are the owners of a lease of certain coal mining lands

which are therein described, in order to give effect to all the language of the contract it is clear that the parties intended that commissions would be owing only on such coal as was mined from the property described therein. The provisions of the contract in this respect are:

"Whereas, the Producers have and are the owners of a lease of certain coal mining land and equipment and are operating in the mining of coal in Carbon County, Utah, which mining land is more particularly described as follows, to wit: (Then follows description)

"And whereas, the Producers in the production of their coal to be mined, from this time on, desires to appoint the Truckers Sales Corporation their Sales Agent of all coal mined and sold to act for them in all matters relating to the disposition and sale of their coal * * *."

Nowhere does this contract expressly limit the coal to be sold to that mined from the property described. On the other hand, it expresses the desire that the plaintiff shall act as their agent in the "sale of all their coal." To sustain the appellants' contention we would have to read into this contract words which the parties themselves did not place therein. The apparent intention of the parties as expressed in this contract was that plaintiff should act as sales agent for all coal that was taken from the mine in question. The Court therefore did not err in this construction of the contract.

Finally, appellants Schultz and Radcliff contend that they are not obligated to pay any commissions to plaintiff; they were not mining coal nor did they have any coal to sell, and did not agree by their contract to pay or guarantee the payment of any commission, or any other sum to the plaintiff. They argue that by their contract they merely accepted the appointment of plaintiff as Sales Agent and agreed that their interests should be bound by all the terms of the contract, Exhibit "A," and therefore they are under no personal obligation to pay the plaintiff anything. It is not disputed that Exhibit "A" and Exhibit "B" were made at the same time and place, that all of the defendants were present, that a copy of Exhibit "A" was attached to Exhibit "B" and

expressly made a part thereof, and contained the following provision:

"1. *That the first parties* (Schultz and Radcliff) accept and affirm the appointment of said Sales Agent under the terms of said contract (Exhibit 'A') and consent and *hereby agree that they* and their respective interest in and to said property *shall be bound by all the terms of said agreement* appointing said sales agent *as effectively as though they themselves had been parties to said agreement and had affixed their names thereto.*" (Italics added.)

The italicized words of the above quotation with the personal obligations assumed by Schultz and Radcliff provide that, they will be bound by the terms of the agreement as effectively as though they were parties to and had signed the contract, Exhibit "A." In all contracts there must be at least two parties or groups of parties, each having different rights and obligations thereunder. The rights and obligations of each party or group of parties must be fixed by the terms of the contract. In the contract, Exhibit "A," one group consisted of the plaintiff and the other group consisted of the partnership. The plaintiff agreed to act as sales agent for the partnership and to actively solicit the sale of its coal; the partnership agreed to pay therefore to the plaintiff 25c per ton for all coal sold. It is clear that by the contract between plaintiff and Schultz and Radcliff, Exhibit "B," that Schultz and Radcliff did not intend to be bound to solicit the sale of the coal or to assume the obligations which the plaintiff agreed to perform. However, it is not so clear that they did not intend to assume the obligations which the partnership agreed to perform. Plaintiff contends that is just what they did agree to do. The fact that Schultz and Radcliff did not own the coal and had no coal to sell, and the further fact that they were only to receive 15c per ton for all coal sold, indicated that they did not intend to assume the obligation to pay the plaintiff's commission. Since all of the parties were present when Exhibits "A" and "B" were signed, if the parties intended that Schultz and Radcliff should be bound to perform all the ob-

ligations which Exhibit "A" imposed on the partnership, it seems strange that they were not simply made parties with the partnership to that contract. There being no express statement as to what their obligations were under Exhibit "A," and since they might have been made parties to the contract and still assumed different obligations from either group or parties thereto, we hold that they did not agree to pay plaintiff's commission and are therefore not liable therefor. The judgment of the trial court against Schultz and Radcliff is therefore reversed.

Appellants raise the question of the sufficiency of the evidence to sustain various findings of fact by the court, particularly as to whether the plaintiff has performed its part of the contract. This argument is based on a construction of the contract which required the plaintiff to actually sell the coal or to show that the sale was the result of its efforts. This is not required under the contract as construed. The evidence is amply sufficient to show that plaintiff performed its part of the contract as construed by the court. The judgment of the court against Mike Gambero must be affirmed.

The cause is remanded to the district court with directions to enter judgment in accordance with the views expressed herein. Appellants Schultz and Radcliff are awarded their costs against respondent and respondent is awarded its costs against appellant Gambero.

WOLFE, C. J., and LARSON and McDONOUGH, JJ., concur.

MOFFAT, Justice (dissenting).

I dissent from that part of the opinion of the court which reverses the judgment against appellants Schultz and Radcliff. I think the language of the contract between the Trucker Sales Corporation and Schultz and Radcliff (Exhibit "B"), quoted in the opinion, binds Schultz and Radcliff under the contract between the Trucker Sales Corporation and Potter and Gambero (Exhibit "A") "as effectively

as though they themselves had been parties to said agreement and had affixed their names thereto." The language is plain, clear and unambiguous.