NANNIE W. FISCUS ET AL. V. JOSEPH R. WILSON ET AL.

FILED SEPTEMBER 20, 1905. No. 13,875.

1. **Mortgage: CONSTRUCTION.** A receives from B the sum of $5,000, and executes and delivers to B a mortgage on real estate providing for the payment of $300 per annum during the lifetime of B. The mortgage contains the following provision: "It is understood and agreed that the intention of the parties hereto is to secure to said B the interest on said principal sum of $5,000 during the term or period of his natural life, and, in case the interest is paid according to the terms thereof, the principal sum of $5,000 is to remain to said A, her heirs, executors, administrators and assigns, and upon the death of said B and payments of interest as aforesaid this obligation is to become null and void." *Held* not to be an attempt at a testamentary disposition of B's property.

2. **Contract: CONSTRUCTION.** In the determination of the rights of parties to a contract, the contract should be construed in the light of surrounding circumstances and the condition of the parties at the time of making it.

3. ———: ———. Where the parties to a contract have, with a knowledge of its terms, given it a particular construction, such construction will generally be adopted by the courts in giving effect to its provisions.

ERROR to the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Reversed with directions.*

*Robert Ryan,* for plaintiffs in error.

*A. M. Harrah, Geo. E. Hibner, Hall & Marlay, Willard E. Stewart, Thomas C. Munger, Mockett & Polk, C. O. Whedon* and *N. K. Griggs, contra.*

JACKSON, C.

This action involves the right of certain heirs of William W. Wilson, deceased, in a partition proceeding, to participate in the distribution of the partitioned estate in proportion to their respective shares, without diminution on account of the financial transactions of such heirs with the deceased in his lifetime. William W. Wilson died intestate in Lancaster county on the 20th day of March, 1901. His surviving heirs were Joseph R. Wilson, Carrie W. Covert, Roxana Wilson, Mary A. Wilson, Carrie C. Slater, Katharine Saum Howard, Jay Saum, Jennie L. Shuster, D. Banks Wilson, William W. Cook, Nannie W. Fiscus, Zachariah T. Wilson, Burt Wilson, Minnie Wilson Royer, Foss Wilson and Gladys Glenn. During the lifetime of the deceased he delivered to Nannie W. Fiscus the sum of $5,000, and she, joining with her husband, executed and delivered to him a certain mortgage bond in the sum of $10,000, conditioned "for the payment of three hundred dollars ($300) on the 24th day of May, 1894, and the like sum of three hundred dollars ($300) on the 24th day of May of each and every year thereafter following, during the term of said Wilson's natural life; the said annual sum of three hundred dollars ($300) each being legal interest at the rate of six per cent. on five thousand dollars ($5,000) this day advanced to Nannie W. Fiscus by said Wilson; and, in case of default of said first parties hereto in the payment of any one of the said instalments of interest for the period of thirty days after said instalments of interest become due, then in that event the whole amount of said principal sum of five thousand dollars ($5,000), together with the interest thereon, shall become due and pay-

able forthwith; and it is understood and agreed that the intention of the parties hereto is to secure to said W. W. Wilson the interest on said principal sum of five thousand dollars ($5,000) during the term or period of his natural life, and in case the interest is paid according to the terms thereof, the principal sum of five thousand dollars ($5,000) is to remain to the said Nannie W. Fiscus, her heirs, executors, administrators and assigns, and, upon the death of said W. W. Wilson and the payments of interest as aforesaid, this obligation is to become null and void, and of no effect." This bond also described certain real estate in Pennsylvania, which the makers pledged as security for the performance of the conditions of the bond; and later in the bond it was provided: "In case of default being made at any time in the payment of any one of the said instalments of interest, or any part thereof, for thirty days after the same falls due as aforesaid, the whole of said debt and interest shall, at the option of the said party of the second part, his executors, administrators or assigns, thereupon become due and payable." A further provision in the bond was: "That if the said Calvin S. Fiscus and Nannie W. Fiscus, their heirs, executors, administrators and assigns, do and shall well and truly pay, or cause to be paid, unto the said party of the second part, his heirs, executors, administrators or assigns, the interest as aforesaid on the days and times hereinbefore mentioned and appointed for the payment thereof, in like money in the way and manner hereinbefore specified, and all taxes that may be assessed on this mortgage, without any fraud or further delay, and without any reduction, defalcation or abatement to be made for or in respect of any taxes, charges or assessments whatever, then and from thenceforth as well this present indenture, and the estate hereby granted, as the said obligations above recited, shall cease, determine, and become absolutely null and void to all intent and purposes; anything hereinbefore contained to the contrary thereof in anywise notwithstanding."

They also at the same time delivered what might be

termed a contract, containing this provision: "The condition of this obligation is such that if the above bounden Calvin S. Fiscus and Nannie W. Fiscus, his wife, their heirs, executors and administrators, or any of them, shall and do well and truly pay or cause to be paid unto the above named W. W. Wilson the just and full sum of three hundred dollars ($300) on the 24th day of May, A. D. 1894, and a like sum of three hundred dollars ($300) on the 24th day of May of each and every year following thereafter during the term or period of said Wilson's natural life, the said annual sum of three hundred dollars ($300) each being legal interest at the rate of six per cent. on five thousand dollars ($5,000) this day advanced by said W. W. Wilson to said Nannie W. Fiscus, and in case of default of said first parties hereto in the payment of any of the said instalments of interest for the period of thirty days after said instalments of interest become due, then and in that event the whole amount of said principal sum of five thousand dollars ($5,000), together with interest thereon, shall become due and payable forthwith.  And it is understood and agreed that the intention of the parties hereto is to secure the said W. W. Wilson the interest on said principal sum of five thousand dollars ($5,000) during the term or period of his natural life, and, in case the interest is paid according to the terms thereof, the principal sum of five thousand dollars ($5,000) is to remain to said Nannie W. Fiscus, her heirs, executors and administrators, and assigns, and upon the death of said W. W. Wilson and payment of interest as aforesaid this obligation to become null and void and of no effect."

The interest payments on this bond were made by Nannie W. Fiscus and her husband up to and including the payment due in May, 1899, and no payments were thereafter made by them. On the 24th day of July, 1894, the deceased executed a formal release of the mortgage bond given by Nannie W. Fiscus and her husand.  This release he had in his possession until some time in 1898, when it was delivered to S. B. Donaldson, an attorney at law at

Wilkinsburg, Pennsylvania, who later gave to Wilson a written receipt as follows: "Pittsburg, Pa., Sept. 23, 1898. Received from W. W. Wilson a release of a mortgage given by Calvin S. Fiscus and Nannie W. Fiscus, his wife, to said Wilson. The said mortgage is for $5,000 and recorded in the recorder's office of Allegheny Co. state of Pennsylvania, in mortgage book vol. 663, page 487. The said release and satisfaction is to be held in escrow by me and is to be recorded in said recorder's office of Allegheny Co. upon the decease of said W. W. Wilson. S. B. Donaldson."

Concerning the custody of this release, Mr. Donaldson testified: "That he met the deceased at the home of Nannie W. Fiscus, and, after being introduced to Mr. Wilson, Wilson said: 'I want to consult you about a mortgage which I hold against Mrs. Nannie Fiscus, covering this property here.' He said to me that he understood that some question might be raised as to the satisfaction of the same, notwithstanding the terms of the mortgage providing that it should be canceled and satisfied at his death. He said he had given Mrs. Fiscus this money, and that he did not wish her to have any difficulty whatever with it when he was gone, and that the property was to be entirely clear of the mortgage at the time of his death; that he had a paper prepared which he thought would satisfy the record in such a way as to make her title clear and unincumbered so far as his mortgage was concerned. He then proposed to leave said paper with me. In case of his death, I should file it or have it filed in the recorder's office of Allegheny county. He told me to take the paper with me and examine it carefully, and, if I thought it would not make such a record as would fully discharge the mortgage, to prepare another paper that would give her a record clear of said mortgage and that would not likely be questioned. * * * He said: 'I have given her this money, I want the record of her mortgage to be clear when I am gone.' * * * Mr. Wilson said that he intended only to collect interest on the money so long as he

saw fit, and in no event was there any interest or any money whatever to be accounted for by Mrs. Fiscus or her husband at the time of or after his decease. I was to keep said release, which he delivered to me, until after his death, and then to be entered by me of record, and not to be recorded before that time unless he authorized me to do so." The release was filed and recorded on the 1st day of April, 1901.

On July 7, 1898, the deceased wrote a letter to Mrs. Fiscus from Lincoln, Nebraska, in which he said: "Has Mr. Donaldson given you his opinion of the matter and where? If so, tell me what he said, and if he wants me to execute some new papers. I am anxious to have it done right, as I want you to have no further trouble about it when I am gone the way of all flesh; so ask him to give you his opinion and not me. I will in all probability write Mr. Donaldson and try and fix things that will last." In a later letter he said: "Was glad to know that Mr. Donaldson thought the release I gave him to hold was sufficient; but if at any time he should alter his opinion, let me know it, and we will make new writings that will be good, as I am very anxious to make it beyond a doubt."

On the 28th day of April, 1894, Katharine Saum Howard, then Katharine Saum, received from the deceased the sum of $3,000, and at that time executed and delivered to the deceased a mortgage on certain real estate in Iowa. The conditions of the mortgage were as follows: "Provided, always, that these presents are upon the express condition that if the said Katharine Saum or her heirs, executors or administrators, shall pay or cause to be paid to the said W. W. Wilson, during the full term of his natural life, the sum of one hundred and eighty dollars ($180) annually—said payments shall commence the first day of May, 1895, and annually on the first day of May thereafter during his life; said sum being interest at the rate of six (6) per cent. per annum upon the aforesaid sum of three thousand dollars ($3,000)—and also pay six

32

(6) per cent. per annum on all annual payments that are not paid at maturity, then and in that event these presents shall be void and of no effect. And it is further agreed and understood that in case default be made at any time in the payment of any one of said instalments of interest, or any part thereof, or for taxes that may be assessed or levied on said premises for thirty days after the same become due and delinquent as aforesaid, then the whole of said debt and interest shall become due and payable at the option of said W. W. Wilson. And it is still further provided that if the said Katharine Saum, her heirs, administrators or executors, shall refuse or neglect at any time to pay the taxes when due as herein provided, then the said W. W. Wilson may pay the same, which sum so paid, with ten (10) per cent. interest per annum, shall be a lien upon said premises like the principal. The intention of this instrument is to secure to the said W. W. Wilson, during his natural lifetime, the interest upon three thousand dollars ($3,000) at the rate of six (6) per cent., payable annually, and in the event these conditions are strictly fulfilled, the said sum of three thousand dollars ($3,000) shall be vested in the said Katharine Saum, her heirs, administrators or executors, forever." The annual payments provided for by the mortgage had been fully paid at the time of Wilson's death, so that there was no default on the part of Katharine Saum Howard.

On July 10, 1900, the deceased wrote Mrs. Howard from Lincoln, addressing her as follows: "Dear Katharine: I wrote you yesterday and forgot to mention about that release I left with Mr. Harrah. You do not really need a note from Mr. H., but you had better preserve his letter to you acknowledging the note of the release left by me. That is all you need, but I took a receipt from him as it is necessary in case it should be put on record without my consent. I think you are perfectly safe, as you have his letter explaining you that he has it, and that is as good as a formal receipt, so don't worry any more over that. And if anything happens to me, you know where it is, and all

you have to do is to pay up the interest to the date of my death and get the release."

On the 1st day of June, 1894, Wilson executed a formal release of the Katharine Saum mortgage, and on June 27, 1900, delivered the release to A. M. Harrah, an attorney at law at Newton, Iowa, taking Mr. Harrah's receipt, as follows: "Newton, Iowa, June 27, 1900. Received of W. W. Wilson a release of mortgage securing a $3,000 mortgage signed by Katharine Saum, recorded in book 189, page 126, Jasper Co., Iowa. Release to be held in escrow until notice of death of Wilson, then to be placed on record on evidence being produced that interest is paid to date of said death. Then record to be delivered to said Katharine. A. M. Harrah." After Mr. Wilson's death this release was properly recorded. On the same date of the transaction with Katharine Saum, Jay Saum received from the deceased the sum of $3,000, and on the same date executed and delivered to the deceased a mortgage on real estate in Iowa, containing provisions substantially the same as those found in the mortgage given by Katharine Saum. The annual payments provided for in the Jay Saum mortgage were all made, the last payment having been made by a promissory note, and acknowledged by the deceased by a letter as follows: "Lincoln, Nebraska, May 22, 1900. Jay Saum, Esq., Dear Nephew: I found your letter of the 9th inst. awaiting me on my return from Kansas City and Wichita, enclosing your promissory note for $170, payable on one year from May 1, 1900, with 6 per cent. interest, for which I am very thankful, as it closes up the interest to May 1, 1900. I inclose you a note, which please carefully preserve, as it may be useful some day." The deceased also executed a formal release of the Jay Saum mortgage, and on June 27, 1900, delivered the same to Mr. Harrah, taking from him a receipt substantially like the one given for the Katharine Saum release. This release was also recorded after the death of Mr. Wilson. No notes were taken by the deceased from Katharine or Jay Saum in connection with his transactions with them.

After Wilson's death, George E. Hibner was appointed and qualified as administrator of the estate, and at the time of the commencement of this action the administration of the estate had proceeded beyond the time appointed for the filing of claims against the estate, and it was determined that the personal property was sufficient to pay all indebtedness and the cost of administration, and thereupon Katharine Saum Howard, Jay Saum, Roxana Wilson, Nannie W. Fiscus and William W. Cook commenced an action for the partition of the real estate involved in this controversy; the remaining heirs and the administrator were named as defendants. Thomas C. Munger was appointed guardian *ad litem* for the defendant Mary A. Wilson, a person of unsound mind, and answered in her behalf. R. S. Mockett was appointed guardian *ad litem* for the defendant Gladys Glenn, and answered in her behalf. Foss Wilson, Zachariah T. Wilson, Burt Wilson, Minnie Wilson Royer, Joseph R. Wilson and Jennie L. Shuster also answered. In each of the answers above referred to it was alleged that William W. Wilson in his lifetime loaned to Nannie W. Fiscus the sum of $5,000, to Katharine Saum Howard the sum of $3,000 and to Jay Saum the sum of $3,000. Copies of the mortgages given by them, together with a copy of the contract with Nannie W. Fiscus and her husband, were attached to and made a part of the answers, and it was alleged that no part of the principal or interest had been paid. They prayed for an accounting of the several sums due under the conditions of the mortgages, and that the amounts so found due be set off against the respective shares of Nannie W. Fiscus, Katharine Saum Howard and Jay Saum. Carrie W. Covert answered, but did not controvert the right of Nannie W. Fiscus, Katharine Saum Howard and Jay Saum to participate according to their shares. Nannie W. Fiscus, Katharine Saum Howard and Jay Saum replied, admitting the execution and delivery of the mortgages by each of them, and the contract by Nannie W. Fiscus; alleging that the sums received by them were

gifts on the part of Wilson during his lifetime; that they had fully complied with all of the conditions named in the mortgages, and alleged that the heirs of William W. Wilson had no right in this action to obtain a decree establishing claims for money against other heirs; that no one but the administrator of the estate of Wilson could sue for, collect or enforce payment of any claim, or maintain an action therefor. They also 'challenged the jurisdiction of the court to adjust money claims between heirs, or to assign to heirs the residue of estates of deceased, alleging that such jurisdiction belonged exclusively to county courts. Upon the issues thus presented there was a trial, and the court found, among other things: "That during the lifetime of William W. Wilson he loaned money to each of the hereinafter named heirs, and that on the 23d day of September, 1898 (?), he loaned to Nannie W. Fiscus the sum of $5,000, to Katharine Saum Howard the sum of $3,000 on the 28th day of April, 1894, and to Jay Saum the sum of $3,000 on the 28th day of April, 1894. That at the time of the loans so made to Nannie W. Fiscus, Katharine Saum Howard and Jay Saum, said persons above named executed and delivered to William W. Wilson bonds and mortgages to secure the payment of said sum of money so received by each of them, and the interest thereon. And the said mortgages or bonds so executed by the several parties to the said William W. Wilson, deceased, provided, among other things, that it was understood and agreed that the intention of the parties thereto was to secure to the said William W. Wilson the interest on said principal sums so advanced, during the term or period of the natural life of the said William W. Wilson, and that in case the interest was paid according to the terms thereof the principal sum was to remain to the said mortgagors, their heirs, executors, administrators and assigns, and that upon the death of the said William W. Wilson and the payment of interest as aforesaid the obligations or mortgages so executed by them to secure such money as herein described were to become null

and void and of no effect. That the said William W. Wilson, at or about the time of making such advancements as are herein described, executed releases of the said mortgages and satisfactions thereof, retaining the same in his possession or depositing the same in escrow to be delivered to the said parties to whom such advances had been made, conditioned upon the performance of the several conditions therein expressed; the more important of which was the payment of the interest by the several parties upon the amounts so advanced to them by the said Wilson at the time said interest became due up to the time of his death as aforesaid. And it was clearly the intention of the said William W. Wilson that the said advancements so made to the several parties herein, should be considered and was intended to constitute gifts to take effect upon his death, conditioned upon the payment of the interest as aforesaid. That said Jay Saum and Katharine Saum Howard had paid all interest due and owing upon their several obligations at the time the same became due, and at the time of the said William W. Wilson's death they were not in default of any of the conditions of their several obligations expressed. That the said Nannie W. Fiscus paid interest upon the amount so advanced to her by said William W. Wilson up to March 24, 1899, but had not paid or offered to pay any interest on said advancement subsequent to said date, and at the time of the death of the said William W. Wilson was in default of interest since the 24th day of March, 1899.

"Upon the foregoing facts the court finds the following conclusions of law: In the construction of the contracts between the several parties herein and now under consideration in this case, it is only necessary to consider, in determining the issues joined between the parties, the act to be performed and the manner of performing it. And such construction therefore must be adopted as will give effect to the provisions which carry out the intent of the contract made between the claimants herein and the deceased William W. Wilson. It does not seem to the court

necessary to pass upon the question, so far as the contract with Nannie W. Fiscus is concerned, as to whether that constituted a gift 'inter vivos' or not. The payment of the advances were dependent upon the condition that interest should be paid on the sums so advanced until the death of the said Wilson. The said claimants having defaulted in the performance of this vital condition, it is clear to the court that, notwithstanding the findings heretofore made 'that it was the intention of the said Wilson that such advances should never be returned or repaid, provided the interest thereon should be paid until his death,' the said claimant, Nannie W. Fiscus, having failed to pay such interest, forfeited her rights under the contract. The court is therefore of the opinion that the said Nannie W. Fiscus should be charged with the sum so received. The only remaining question to be determined by the court in this case is the rights of Jay Saum and Katharine Saum Howard in the premises. They having complied with all of the conditions of said contract were entitled to the release of their several mortgages, and would be entitled to their share of said estate in addition to the advances so made to them. Therefore it is adjudged by the court that the defendant, Nannie W. Fiscus, be charged with the sum of $5,000 from her distributive share of the estate of William W. Wilson, deceased, and that the advances made by the said William W. Wilson during his lifetime to the other heirs of said estate, as above found, be, and the same hereby are, decreed to be canceled and paid in accordance with the contract as hereinbefore found."

In the final disposition of the case in the district court the court allowed to Mr. Munger and Mr. Mockett, as guardians ad litem, certain attorneys' fees, and directed that such fees should be charged to the entire estate. Nannie W. Fiscus brings the case to this court by petition in error because of the judgment of the lower court charging her with the sum of $5,000 received by her from the deceased in his lifetime, and directing that the same be

set, off against her share of the estate. She also alleges error in the allowance of attorneys' fees to Messrs. Munger and Mockett and charging the same against the entire estate. Katharine Saum Howard and Jay Saum have filed cross-petitions in error, solely on the ground of the question of the attorneys' fees allowed to the guardians *ad litem*. Those of the defendants contesting the right of Katharine Saum Howard and Jay Saum to participate in the distribution without diminution filed cross-petitions in error because of the judgment allowing Katharine Saum Howard and Jay Saum to participate in the distribution without accounting for the controverted sums received by them from the deceased. They have, however, presented a motion to be permitted to dismiss their cross-petitions and to be allowed to proceed as by appeal. That motion is submitted with the merits of the controversy, and is allowed.

Omitting for the present the question of attorneys' fees, the contention of the parties in this court may be summarized as follows: The parties to the action who oppose the right of Nannie W. Fiscus, Katharine Saum Howard and Jay Saum to participate in the distribution without accounting for the sums received by them from the deceased now contend that the transaction of the deceased with reference to the sums received from him by those parties was an attempt on the part of the deceased to make a testamentary disposition of the sums so received. On the contrary, it is contended by the other side that the sums received by them should be treated as gifts *inter vivos*.

Taking up first the claim of an attempted testamentary disposition of the property of the deceased, we find ourselves unable to agree with that contention. A testamentary disposition of property involves the act or will of a single individual, a condition that does not here exist. The question involved is rather one arising out of contracts between parties in every respect possessing the capacity to contract. The rights of the parties must, therefore, depend upon their contract obligations, and in the

determination of those rights the contracts should be considered in the light of surrounding circumstances and the condition of the parties at the time of making them. Where the parties to a contract have, with a knowledge of its terms, given it a particular construction, such construction will generally be adopted by the courts in giving effect to its provisions. *Paxton v. Smith,* 41 Neb. 56; *Lawton v. Fonner,* 59 Neb. 214. Where both parties to a contract, regarding which there may be doubt or uncertainty as to the proper construction, by their acts under and with reference to it, and with knowledge of its terms, have giv n to such contract one and the same construction, it is generally a safe rule to adopt such construction. *State v. Board of County Commissioners,* 60 Neb. 566.

It becomes important, therefore, to consider the relations which these parties sustained toward the deceased, and the course which they pursued with reference to the contracts subsequent to the time of their execution. No one could read the record in this case without becoming convinced that Nannie W. Fiscus and Katharine Saum Howard were favorite nieces of the deceased, and that Jay Saum was a favorite nephew. He seems to have been a frequent visitor at their homes. His communications to them were of a kindly and endearing nature, and his every act in connection with the transactions involved showed a deep solicitude for their welfare and the ultimate benefits which they might enjoy from his bounty. There were frequent defaults in the payment of the instalments of interest, sometimes extending partially for a year or more after the time of payment, and no word of protest or act on the part of the deceased because of such default, and the fact that after such defaults had occurred he took the precaution to place the discharge of the mortgages, executed by these parties in his favor, in the hands of third persons, in connection with the statements made by him at the time they were so deposited, seems to show conclusively that it was never his intention to require a return of the principal sums given by him to these relatives. The intention of the

deceased is fully expressed in his letter of July 10, 1900, to his niece, Katharine Saum Howard, wherein he says, in reference to the release left with Mr. Harrah: "If anything happens to me, you know where it is, and all you have to do is to pay up the interest to the date of my death and get the release." This letter gives force to the testimony of the witness Donaldson concerning the conversation had by him with the deceased, at the time of the delivery to him of the Nannie W. Fiscus release, wherein he states that the deceased informed him that he had given Nannie W. Fiscus the $5,000; that his intention was to collect interest on it so long as he saw fit, but that he had given her the $5,000. Upon a consideration of the evidence in the case, we are impelled to construe the contract between the deceased and these parties so as to give effect to the evident intention of the parties, and to hold that in the distribution of the estate neither Katharine Saum Howard, Jay Saum nor Nannie W. Fiscus should be charged with the principal of the sums received by them. They should, doubtless, be charged with interest on such sums, not already paid, up to the date of the death of Mr. Wilson.

As to the matter of attorneys' fees, counsel who were appointed guardian *ad litem* for their respective wards were entitled to have their fees allowed by the court and taxed as a part of the costs of the case. The only question is whether it would be equitable in this suit to require that item of costs to be paid by all of the parties in proportion to their interest. The general rule is that in a partition proceeding, where such proceeding is adversary, counsel fees may not be taxed against the entire estate, and while in such cases, where infants are parties, considerable latitude has been given to the discretion of trial courts, yet where, as in this case, the appointment is not a mere formal one, but is for the purpose of conducting the litigation on behalf of the wards, and such wards choose to make the proceeding an adversary one, we think the more equitable rule is to require them to stand on the same footing with other parties to the litigation, and, under the cir-

cumstances as they are here presented, we think the trial court erred in requiring such fees to be borne by all the parties in proportion to their interest.

We recommend that the judgment of the district court as to Nannie W. Fiscus, and in so far as it taxes attorneys' fees to be borne by all the parties, be reversed, and that the cause be remanded to the district court, with instructions to enter a decree in conformity with this opinion.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court as to Nannie W. Fiscus, and in so far as it taxes attorneys' fees to be borne by all the parties, is reversed, and the cause is remanded to the district court, with instructions to enter a decree in conformity with this opinion.

JUDGMENT ACCORDINGLY.