ROBERT J. TATE, APPELLANT, V. ROBERT F. KLOKE, APPELLEE.

FILED MARCH 14, 1913. No. 17,092.

1. **Contracts: CONSTRUCTION.** Effect must be given to a written memorandum and deed executed pursuant thereto as one transaction, in the light of the facts as they existed at the time of the execution and delivery of the deed.

2. **Appeal: TRIAL DE NOVO: DECREE.** The issues presented by appeal to this court in a suit in equity must be tried *de novo*, and a proper decree entered or directed. Upon the issues and evidence stated in the opinion, the decree of the district court is reversed, and decree directed in favor of the plaintiff.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Reversed with directions.*

*John J. Sullivan, Edmund C. Strode, Jesse L. Root,* and *M. V. Beghtol,* for appellant.

*Frank T. Ransom* and *A. S. Churchill, contra.*

SEDGWICK, J.

In 1903 the plaintiff was in the real estate business, residing in Plainview, Pierce county, and the defendant was the president of a bank at West Point, and was residing in that town. Under an agreement between them they purchased several tracts of land in Pierce county. The defendant furnished the money for these purchases, and took the titles of land purchased in his name. The plaintiff was active in the sale and purchase of the land, and it was agreed that after allowing the defendant, out of the sales of the land, the money which he had advanced in the purchase thereof, together with interest thereon, the net proceeds should be equally divided between the parties. In October, 1903, they purchased a tract of 240 acres, being the N. E. ¼ and the E. ½ of N. W. ¼ of a certain section in Pierce county, at a cost to them, after deducting the plaintiff's commission as real estate agent, of $6,600. Three days later they purchased the remaining 80 acres of the N. ½ of the section at the price of $1,400. After these lands were disposed of, the plaintiff brought this action, and alleged that the defendant had not accounted for and paid to him his one-half of the net profits. Upon trial in the district court for Douglas county, the court found in favor of the defendant, and the plaintiff has appealed.

The land was not sold in tracts as it was purchased, but the N. W. ¼ of the section was first sold, and afterwards the N. E. ¼. There is some controversy between the parties as to the sale of each of these quarters, but the principal controversy related to the last sale of the N. E. ¼ of the section. While the parties held this land, the plaintiff entered into a partnership in the real estate

business with one Engler who had formerly been the cashier of the defendant's bank, and they conducted real estate business in the name of Tate & Engler at Plainview for some time, and undertook to sell this half section of land. The contention in regard to the sale of the N. W. ¼ will be considered later. The plaintiff contends that, after the relation between himself and the defendant had been somewhat changed by the forming of the new partnership with Mr. Engler, it was agreed between the plaintiff and defendant that Tate & Engler might sell the N. E. ¼, and have for their services in so doing all that they could obtain therefor over and above $5,450. The defendant denies this agreement, and this constitutes the main controversy between the parties.

The plaintiff and Mr. Engler both testify positively to this agreement and understanding between the parties, and the defendant as positively denies that any such agreement or understanding was ever had. These three men appear to have had confidence in each other. This evidence shows that they were not very careful in making their contracts. The business was mostly done in general conversation. No writings were at any time executed between them, and it is not unusual, under such circumstances, that there should be honest misunderstanding. The conflict in their testimony does not appear to be in regard to the facts, nor in regard to the language used by them in their various talks about the matter. Each appears to have misunderstood the other's meaning, and this led to their subsequent difficulty. It does not appear to us to be a case of fraud or false swearing. Tate & Engler found a purchaser for this N. E. ¼ in one Heyn, who, it appears, agreed to purchase it for $6,400. They told the defendant that they had a purchaser for the land, and asked him to convey the land to them, according to their understanding, for $5,450. After some conversation in regard to the matter, the defendant agreed to do so, and they paid to him $500 thereon, and the defendant executed and delivered to them the following

memorandum: "West Point, Nebr., Oct. 23d, 1905. Received of Tate & Engler $500 as part payment for the purchase of the northeast quarter of section 17, township 27, range 3 west, at $5,450, and to assume a mortgage of $3,000 on said land drawing interest at the rate of 5%. Balance of $1,950 to be paid in cash on March 1st, 1906, $550 and a mortgage of $1,400 drawing 6% interest. To be closed on or before March 1st, 1906. (Signed) R. F. Kloke." Mr. Heyn resided near West Point, and was acquainted with the defendant, and apparently had before that time transacted some business with him. The defendant discovered that they were obtaining $6,400 for the land from Mr. Heyn, and then it appeared that there had been a misunderstanding between the defendant and Tate & Engler in regard to this quarter section of land. The defendant insisted that he had consented that the land might be sold for $5,450, if that was the best price that could be obtained. The plaintiff contended that it had been agreed that Tate & Engler should have the land for that price, and for their services in finding a purchaser and making the sale should have all they could obtain for the land above the agreed price of $5,450. On account of this misunderstanding the sale to Mr. Heyn failed. The defendant insists that the above memorandum was procured by fraud and misrepresentation, in concealing from him the price for which the land had been contracted.

As we have seen, the original agreement between the plaintiff and defendant contemplated that the lands purchased should be taken in the name of the defendant, and, when sold, should be by him deeded to the purchaser. The defendant says that, in making this agreement to deed the land directly to Tate & Engler, he supposed that it was immaterial whether it was so deeded or deeded by him directly to the purchaser, and that he did not particularly inquire why they desired to have the deed to themselves instead of to the purchaser. However that may be, it appears that the defendant retained the $500, and that some time afterwards, and after he had full in-

28

formation of the claim of the plaintiff and of the plaintiff's understanding of their agreement, he executed the deed, pursuant to the memorandum which he had given them, as a final disposition of the whole controversy. We cannot now say that the deed and the memorandum, in pursuance of which the deed was given to Tate & Engler, were procured by fraud. This memorandum and deed are consistent with the plaintiff's understanding of their agreement, and are wholly inconsistent with the defendant's claim.

There is not much conflict in the evidence in regard to the disposal of the N. W. ¼ of the section. Tate & Engler exchanged this quarter, taking an 80-acre tract in Cass county in part payment. The defendant made a deed to the purchaser, and recited in the deed a consideration of $6,000. The defendant testifies that Mr. Engler told him of the opportunity to make the exchange, and that they were taking the 80 acres of land in Cass county, and that they would make the quarter section of land net to him $5,000. The defendant now insists that they meant that he was to have all of the difference between the purchase price of this quarter section of land and the $5,000 net to him agreed upon. The agreement between them as to the sale of this quarter was, as usual between them, somewhat indefinitely expressed, but we think that a fair construction of the language used is that, in the exchange of the quarter for the 80 acres of land, the cash value of the quarter for the purpose of settlement between the parties should be considered as $5,000. The N. E. ¼ and ½ of the N. W. ¼ having been purchased together for a sum in gross, and the remaining eighty purchased afterwards, the price paid for the respective quarter sections was indefinite and a matter of estimate. For that reason, it was impracticable to say definitely the profits realized on each quarter section separately. None of the witnesses could state definitely the amount paid by the defendant for taxes and other expenses, and it is difficult to determine accurately what the net profit on the whole trans-

action was. However, giving the defendant the benefit of his own testimony in regard to these expenses, we find from the evidence that the defendant paid for the three eighties $6,600, and for the other 80 acres $1,400, making $8,000 paid for the half section. The defendant, according to his testimony, should be allowed about $1,210 for interest on the money he invested and for taxes paid by him. He received for the N. W. ¼ $5,000, and for the N. E. ¼ $5,450, and collected rents on the land amounting to $324.35, leaving a net profit of $1,564.35. The plaintiff is therefore entitled to one-half of this net profit, with interest thereon at 7 per cent. per annum from their settlement, March 1, 1906.

The judgment of the district court is reversed and the cause remanded, with instruction to enter judgment in favor of the plaintiff as above indicated.

REVERSED.

HAMER, J., dissenting in part, and concurring in the conclusion.

The majority opinion finds 320 acres of land bought by the plaintiff and defendant for $8,000, and the title taken in the name of the defendant, Kloke, who was a bank president, and who furnished the money under an agreement that he was to have one-half of the net profits when the property should be sold. The plaintiff formed a partnership in the real estate business with one Engler under the name of Tate & Engler, and after he had made the arrangement with Kloke. Tate & Engler undertook to sell part of the land, the N. E. ¼, and plaintiff contends it was agreed between him and the plaintiff that Tate & Engler might sell this particular quarter, and for their services for selling it were to have whatever they could obtain over and above $5,450. The defendant testified that he consented the land might be sold for $5,450, if that was the best price that could be obtained for it. The plaintiff, Tate, and Engler, his partner, testified that no such an agreement was made. Tate & Engler found a

purchaser for this N. E. ¼ at $6,400, a Mr. Heyn, and a writing was signed by the defendant, in which he acknowledged the receipt from Tate & Engler of $500 as part payment on the purchase price at $5,450, and containing details of the items of the proposed payment of the remainder. The defendant made the deed to Tate & Engler after he had full information touching the matter in dispute. The majority opinion does not find any fraud in the representations of the plaintiff made to the defendant, Kloke, concerning the price for which this quarter was agreed to be sold, but finds that the sale to Heyn failed because of the misunderstanding, and says: "The conflict in their testimony does not appear to be in regard to the facts, nor in regard to the language used by them in their various talks about the matter. Each appears to have misunderstood the other's meaning, and this led to their subsequent difficulty. It does not appear to us to be a case of fraud or false swearing." And at the same time the majority opinion says this: "We cannot now say that the deed and the memorandum, in pursuance of which the deed was given to Tate & Engler, were procured by fraud. This memorandum and deed are consistent with the plaintiff's understanding of their agreement, and are wholly inconsistent with the defendant's claim."

The majority opinion seems to me to be in disregard of the evidence, so far as that evidence relates to the N. E. ¼, and the contention of the plaintiff and defendant concerning the same; but as the sale of that quarter failed, and therefore no actual profit was made upon it, and as it cannot with certainty be said that an improper division of the profits on the other quarter was made by the opinion, it follows that no one may say that the conclusion reached is wrong. I dissent from so much of the opinion as discusses the contention between the plaintiff and defendant and refuses to consider that the plaintiff is charged with fraud, or that there is any evidence touching that fact; but if there was fraud there was no result from it, because there was no sale of the N. E. ¼ and there

could have been no profit realized from it. I therefore concur in the conclusion.