LAWRENCE BROCK, ADMINISTRATOR, APPELLANT, V. HENRY C. LUETH, APPELLEE.

4 N. W. (2d) 285

FILED JUNE 5, 1942. No. 31361.

*Harry N. Larson* and *Frederick S. Berry*, for appellant.

*John E. Newton* and *Richard E. Twohig, contra.*

Heard before ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

This is an action by administrator with will annexed to recover interest on a promissory note, in which Henry C. Lueth was the maker and his father, Andreas Lueth, was the payee. Jury waived and trial court found generally for the defendant and dismissed plaintiff's petition. Plaintiff appeals.

Petition was filed by Lawrence Brock, as administrator of the estate of Andreas Lueth, deceased, alleging that said Andreas Lueth died testate, and that plaintiff was on February 4, 1939, duly appointed administrator with will annexed of his estate; that on March 1, 1938, the defendant, Henry C. Lueth, executed and delivered to Andreas Lueth, deceased, a note in the sum of $3,000, payable on or before March 1, 1943, with interest at 4 per cent. payable semiannually from date, and if not paid when due principal and interest shall bear interest at the rate of 9 per cent. payable semiannually; that interest payments have been made on said note, viz., $60 paid September 5, 1938, as interest from March 1, 1938, to September 1, 1938, and $30 paid May 26, 1939, as interest from September 1, 1938, to December 1, 1938.

It is alleged that there is due and unpaid interest in the sum of $30, being balance of interest for the period of September 1, 1938, to March 1, 1939, and interest on said sum of $30 at the rate of 9 per cent. per annum from March 1, 1939, and plaintiff prays judgment accordingly.

Defendant for answer alleges that he is the son of A. W. (Andreas) Lueth, deceased, and resided with his father upon his farm in Dixon county, performing all kinds of farm work under the direction of his father from 1898 until about March 1, 1920, when he was about 32 years of age, with the exception of about six months when he was in the service of the United States government as a soldier; that he received no compensation for his work on the farm, excepting such small sums as his father gave him from time to time as spending money; that by reason of the services performed by defendant and Charles A. Lueth, another son of Andreas Lueth, the father was enabled to accumulate considerable property, part of said property being the two farms upon which plaintiff and his brother have resided as tenants immediately prior to March 1, 1938.

It is further alleged that on March 1, 1938, Andreas Lueth advised defendant that he desired to compensate his two sons for the services rendered by them in the accumulation of his property, and in pursuance thereof an oral agreement was entered into between them, whereby said Andreas Lueth should convey to defendant the 160-acre farm upon which defendant resided, and under which agreement defendant was to pay his father interest on the sum of $3,000 at the rate of 4 per cent. per annum during the lifetime of the father; that in fulfilment of the oral agreement the said Andreas Lueth went to the First National Bank of Emerson on said March 1, 1938, and requested F. A. Mieras, the cashier, to prepare the necessary deed and papers to consummate the agreement, and Mr. Mieras prepared the deed and the note hereinabove mentioned, placing on the back of the note the following indorsement:

"Emerson, Nebraska, March 1, 1938.

"The within note to be delivered to the maker Henry C. Lueth upon my death, and to be canceled by the Executor of my estate before his making delivery of same. No payment of any interest or principal to be made by maker after my death in any event.

"(Signed) A. W. Lueth

"F. A. Mieras, Witness."

In pursuance thereof, Andreas Lueth executed and delivered to defendant the warranty deed, and upon the statement of said Andreas Lueth that defendant would never be required to pay any part of the principal of the said note, but would only be required to pay the interest thereon so long as the said Andreas Lueth should live, defendant signed said note, and the father, Andreas Lueth, signed said indorsement.

The answer alleges that Andreas Lueth died on December 1, 1938, leaving a last will and testament, executed on October 27, 1938, and which will contains the following paragraph:

"I am also mindful of my sons Henry C. Lueth and Charles A. Lueth. As they have heretofore received their just share of my estate, represented by farm real estate, they shall receive no further share in the distribution of either real estate or personal properties which may be included in my estate, at the time of my demise."

Defendant alleges that the gross value of the real and personal property of the estate of Andreas Lueth at the time of his death, exclusive of the alleged promissory note of defendant and a similar note executed by Charles A. Lueth under a similar oral agreement, and exclusive of advancements made to the sons and daughters named in said will and their spouses, exceeds the sum of $18,000; that advancements made to the six daughters or their spouses, and to another son of said Andreas Lueth, exceeded the sum of $10,800; that the value of the land conveyed to this defendant did not exceed in value the sum of $8,000.

Defendant alleges that on September 5, 1938, he paid interest to his father in the sum of $60 to September 1, 1938, and on May 26, 1939, paid to plaintiff the sum of $30, being interest on said note from September 1, 1938, to December 1, 1938, the date of the death of Andreas Lueth.

Defendant claims that the transfer of the real estate to him was an absolute gift from his father in recognition for services rendered to him in the accumulation of his prop-

erty, and which the father considered to be due defendant, reserving to himself only an annuity equal to the interest on the sum of $3,000 at 4 per cent. per annum; that defendant was not then indebted to said Andreas Lueth in any sum whatsoever; that there was no consideration whatsoever for the execution and delivery of said $3,000 note from defendant to Andreas Lueth, and the only purpose of said $3,000 note was to insure to his father the payment of 4 per cent. interest on $3,000 so long as the father should live. Defendant alleges that he has complied with every part of the agreement with Andreas Lueth, and is not now indebted to plaintiff herein in any sum whatsoever for interest or principal on the note set forth in the petition.

Motion and demurrer being overruled, the plaintiff filed a reply, admitting the execution and delivery of the deed and the preparation of the note heretofore described, and admitting that Andreas Lueth died on December 1, 1938, leaving a last will and testament which has been duly admitted to probate, which will contained the paragraph in reference to defendant heretofore referred to, and plaintiff denies each and every allegation of new matter stated in said answer, except such as admit allegations of plaintiff's petition.

The cause was tried to the court on July 8, 1941, and taken under advisement, and on September 27, 1941, judgment was rendered, finding generally for the defendant, and that the indorsement appearing upon said note was placed thereon and signed by payee prior to the execution and delivery of said note by the defendant, Henry C. Lueth; that said note was given by defendant to Andreas Lueth in consideration of the execution and delivery to defendant by Andreas Lueth of a deed to the real estate; that the execution and delivery of said note, the indorsement thereon, and the deed were all a part of the same transaction, and must therefore be considered and construed together; that the agreement entered into by the defendant and Andreas Lueth was an agreement solely for the payment of interest upon said note during the lifetime of the payee, and that all

liability of the defendant thereon ceased as of the time of the death of Andreas Lueth; that the indorsement does not constitute a testamentary disposition, but is a part of the original note, and must be considered as such.

The court further found that, the several instruments having been executed and delivered as a part of the same transaction, parol and extrinsic evidence is admissible to show their purpose, and that the parol evidence received at the trial was correctly admitted. It was therefore ordered and adjudged by the court that plaintiff's petition be dismissed, and judgment was entered against plaintiff for the costs of the action.

The plaintiff sets out 12 assignments of error, insisting that the motion and demurrer were both good, and should have been sustained, and

That the court erred in admitting in evidence over plaintiff's objections oral statements claimed to have been made by Andreas Lueth, the deceased, to the effect, or tending to show, that defendant was to pay only interest on the note sued upon as long as said deceased lived, and did not want defendant to pay the note, and the court erred in overruling plaintiff's objections to such testimony;

That the court erred in admitting in evidence over objection oral statements claimed to have been made by said deceased, to the effect that when he was dead the note sued upon was dead;

That the court erred in permitting the witness F. A. Mieras to testify over objection that said Andreas Lueth told him prior to the signing of said note that he never expected and never intended that the boys should ever pay the notes, but wanted to draw the interest from the notes;

That the court erred in admitting in evidence over objection oral testimony contradicting, varying and changing the promise of the defendant contained in said note to pay the amount at the time and as specified in said note.

In addition to these, the principal proposition of law relied upon for reversal is that the indorsement on the back of the note was an attempt by the payee to dispose of the

note following his death, and has all the elements of a testamentary instrument; it was not a valid disposition, because it was not executed in accordance with the statute (Comp. St. 1929, sec. 30-205), which specifically requires two witnesses to subscribe in the manner and form set out therein.

The evidence in this case is rather brief, as the bill of exceptions consists of but 80 pages, and the only witness called in support of the petition was the plaintiff himself, who testified, in brief, that Henry C. Lueth, the defendant, had first been appointed as special administrator, and upon plaintiff's appointment as administrator the said Henry C. Lueth had turned over to him the contents of the safety deposit box in the First National Bank of Emerson, which included the note, exhibit No. 1, which was received in evidence without objection, whereupon the plaintiff rested his case.

The defendant testified that he had lived on the quarter-section of land two and a half miles northwest of Emerson for 50 years, excepting when he was in the army in the first World War, and was 53 years old, and that this was the home place; that in 1918 he was married, and the next year the father had moved into the town of Emerson to reside.

The evidence of the witnesses shows generally that along in the spring of 1938 Andreas Lueth, an elderly gentleman, called his two sons and told them that he intended to turn two farms over to them, and he stopped at the bank and asked Mr. Mieras, the banker, to prepare deeds to the two farms to the two sons, and later the two sons went into the bank with their father, and he stated at the time that he wanted a note from each of the sons in the sum of $3,000, and they were so prepared by the banker. There was some talk at that time as to what Andreas Lueth expected from the sons, and he told the sons that he wanted a little money as long as he lived, and if they would each pay him $120 a year that was all he wanted, and he directed Mr. Mieras to fix up an agreement in that way, and he placed an indorse-

ment on the back of the note, which the father signed before the defendant signed his note.

F. A. Mieras testified that he had been cashier of the First National Bank of Emerson since 1926, and that Andreas Lueth did his banking business there; that about March 1, 1938, he came into the bank and asked the witness to draw two deeds to turn the two farms over to his two sons, Charles and Henry, which was done that date. Several months later, he brought his two sons into the bank, and he signed the deeds, and mentioned that he wanted each of the boys to give him a note for $3,000, "and asked me if I would draw those notes and I did. * * * He never expected, never intended that the boys should ever pay these notes, never wanted them to pay the notes but wanted to draw the interest as an income from the principal of the notes. He asked me if I would make some stipulation on the note reciting his request, which I did. * * * The indorsement on the back was signed after I had written it out. I handed it over and asked if that was what he wanted and he said it was and he signed it and then he handed the notes to the boys and they signed the notes. * * * Q. After the signing of the notes and deeds as you have recited, Mr. Mieras, what was done with the several papers? A. The notes were put in Mr. Lueth's box and the deeds given to the boys and they handed them to me for record and I sent them up for record."

The testimony of the brother, Charles, agrees with the testimony of Henry and the banker, and adds this information,—that Charles objected to signing his note, as he could pay the note, or part of it, in cash right then, but his father told him it never had to be paid, so he signed it, and the father also told Henry that his note was not supposed to be paid either.

It will thus be seen that, as the plaintiff was the only witness who testified in support of the petition, and his evidence was closed when he introduced the note, therefore there is no dispute between the parties in the evidence.

Objections were constantly made by counsel for the plain-

tiff at every step of the taking of the oral evidence on the ground that the testimony offered was for the purpose of altering, changing, or contradicting the instrument sued upon, or the indorsement on the back thereof, or both of them, and that any attempt to change and vary the terms by oral testimony was incompetent.

However, the negotiable instruments law specifically allows testimony to be given, "and in such case the delivery may be shown to have been conditional or for a special purpose only." Comp. St. 1929, sec. 62-116.

Parol evidence is generally admissible when it is offered for the purpose of explaining and showing the true nature of the transaction between the parties. Such evidence is not offered for the purpose of varying the terms of a written instrument between the parties. See *Gifford v. Fox*, 2 Neb. (Unof.) 30, 95 N. W. 1066; *Davis v. Sterns*, 85 Neb. 121, 122 N. W. 672; *Spangenberg v. Losey*, 116 Neb. 112, 216 N. W. 191.

"Effect must be given to a written memorandum and deed executed pursuant thereto as one transaction, in the light of the facts as they existed at the time of the execution and delivery of the deed." *Tate v. Kloke*, 93 Neb. 382, 140 N. W. 278.

"In an action on a promissory note between the immediate parties thereto, testimony tending to prove the purpose for which a note is given does not violate the 'parol evidence rule.' Such evidence is specifically admissible under the negotiable instruments law." *People's State Bank v. Smith*, 120 Neb. 29, 231 N. W. 141.

"The general rule is that, in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance." *Thompson v. Jost*, 108 Neb. 778, 189 N. W. 169. See, also, *Nebraska Hardware Co. v. Humphrey Hardware Co.*, 81 Neb. 693, 116 N. W. 659.

"Facts showing that an indorsement on a note when executed is a substantive part of the note may, be proved by parol evidence." *Doll v. Getzschmann*, 90 Neb. 370, 133 N. W. 417.

A memorandum on the back of a note was held to be a part of the note, and where such a memorandum was made by agreement of the parties before signing, it will bind all the parties to it. *Polo Mfg. Co. v. Parr*, 8 Neb. 379, 1 N. W. 312. See, also, *Specht v. Beindorf*, 56 Neb. 553, 76 N. W. 1059; Annotation, 13 A. L. R. 251.

"It is a general rule, well supported by authority, that marginal notations or memoranda, placed on a bill or note at the time of the execution thereof with the intention of making them a part of the contract, constitute a part of the contract, and must be construed with the body of the instrument to arrive at the true agreement existing between the parties." 7 Am. Jur. 816, sec. 53. See, also, 12 Am. Jur. 518, sec. 22; 10 C. J. S. 480, sec. 44.

"A memorandum upon a note made contemporaneously with and delivered with it, and intended as a part of the contract, is a substantive part of the note, and qualifies it the same as if inserted in the body of the instrument, and with it constitutes a single contract. *Benedict v. Cowden*, 49 N. Y. 396." *Grimison v. Russell*, 14 Neb. 521, 16 N. W. 819.

It is clear from the very terms of the note, and the indorsement on the back, that this note was given solely as a matter of form to secure the payment of $120 annuity to the father so long as he lived, and the special indorsement specifically states that the note is not to be collected after the father's death, but returned to the maker. It may be admitted that a lawyer could have handled this in a better manner, yet in our opinion there is no doubt about the agreement or intention of the parties.

The appellant insists that, if the indorsement on the back of exhibit No. 1 is testamentary in character, then we are confronted with section 30-205, Comp. St. 1929, as amended, which provides, in substance, that no will shall be effectual

to pass any property, or in any way affect the same, unless attested and subscribed in the presence of the testator by two or more competent witnesses. Many authorities are cited in support of this proposition.

In the opinion of this court, the indorsement on the back of the note, signed by the father before he asked his son to sign it, and the note, and the delivery of the deed by the father to his son, the defendant, were all a part of one and the same transaction, and must rightly be construed together as a single contract between the parties. Such contract provided clearly that the son should pay the reserved annuity of $120 so long as the father lived. Having reached this conclusion, we reject the contention of plaintiff that the indorsement on the back of the note was a will or a testamentary disposition of any kind.

In *Horton v. Rohlff,* 69 Neb. 95, 95 N. W. 36, it was held: "If a contract admits of more than one construction, one of which will render it inefficacious or nullify it, that construction should be adopted which will carry it into effect." See 4 Neb. Law Bulletin, 226; *People v. Gosper,* 3 Neb. 285.

The following language in an opinion by this court seems in point: "Taking up first the claim of an attempted testamentary disposition of the property of the deceased, we find ourselves unable to agree with that contention. A testamentary disposition of property involves the act or will of a single individual, a condition that does not here exist. The question involved is rather one arising out of contracts between parties in every respect possessing the capacity to contract. The rights of the parties must, therefore, depend upon their contract obligations, and in the determination of those rights the contracts should be considered in the light of surrounding circumstances and the condition of the parties at the time of making them. Where the parties to a contract have, with a knowledge of its terms, given it a particular construction, such construction will generally be adopted by the courts in giving effect to its provisions. *Paxton v. Smith,* 41 Neb. 56; *Lawton v. Fonner,* 59 Neb. 214." *Fiscus v. Wilson,* 74 Neb. 444, 104 N. W. 856.

"Where the payee of a note carrying interest agreed to cancel the note in consideration of the maker's annual payment during the payee's lifetime of the amount of the interest reserved and the date of payment was changed, there was a sufficient consideration to support the agreement for the discharge of the note, though the payee was then over 90." *Diehl v. McKinnon,* 155 N. W. 259 (173 Ia. 32). See also, *Stroemer v. Van Orsdel,* 74 Neb. 132, 103 N. W. 1053; *Rice v. Lincoln & N. W. R. Co.,* 88 Neb. 307, 129 N. W. 425.

The court has examined all the other assignments of error, but, having discussed at some length the ones presented most vigorously, will not include a discussion of the other points.

We have reached the conclusion that the indorsement on the back of the note, signed by the father and payee before the maker signed the note, must be sustained as valid, and the judgment of the trial court is hereby

AFFIRMED.