FRANKLIN C. SWANSON, ADMINISTRATOR, APPELLEE, V. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, APPELLANT.

10 N. W. (2d) 340

FILED JULY 2, 1943.  No. 31585.

516

*Cleary, Horan, Skutt & Davis* and *Lyle Q. Hills,* for appellant.

*Wear, Boland & Nye* and *John R. McCormack, contra.*

Heard before SIMMONS, C. J., PAINE, YEAGER and CHAPPELL, JJ., and TEWELL and LIGHTNER, District Judges.

PAINE, J.

In this suit at law for accidental death on a policy of health and accident insurance, only one question was submitted to the jury, who found by their verdict, signed by eleven jurors, that after a settlement made between the company and the deceased in 1934, the entire policy of insurance was to remain in force without the payment of future premiums by deceased. On this verdict the court entered a judgment for $5,290, together with attorneys' fees of $500, from which the defendant company appeals.

The transcript discloses that a petition was filed by Franklin C. Swanson, administrator of the estate of Louis C. Larsen, deceased, alleging that deceased was accidentally killed by suffocation on October 19, 1941; that defendant issued to deceased its policy No. 36-21966, which was supplemented by written agreement entered into on June 29, 1934, both of which were in full force and effect on the date of the death of insured. It is further alleged that the policy, together with its supplemental agreement, provides that defendant will pay to the estate of deceased the sum of $5,000 in the event the insured suffered death through accidental means. Plaintiff claims that all requirements have been met, and demand has been made upon defendant for payment of amount due, but defendant has refused to pay said sum or any part thereof, and there is due and owing from defendant to plaintiff the sum of $5,000, with interest at 6 per cent. from October 19, 1941, and plaintiff prays judgment for said amount with attorneys' fees and costs of suit.

In its answer defendant association admits the issuance of the policy, which provided for the payment of $100 a

month for disability resulting from disease which confines the insured continuously within doors and requires regular visits by a legally qualified physician, provided said disease necessitates total disability and total loss of time; providing for the payment of $50 a month, not exceeding one month, for disability resulting from disease which does not confine the insured continuously within doors, but requires regular medical attention, provided said disease necessitates total disability and loss of time. The policy further provides for a payment in advance of $46 premium the first year and of $9 quarterly thereafter, beginning with March 1, 1924, and that if any such dues be unpaid the policy shall terminate on any day such payment is due. Defendant alleges that on May 21, 1933, Louis C. Larsen became disabled as the result of illness; that defendant paid indemnity to insured for confining illness from May 21, 1933, to March 21, 1934; that a dispute then arose between the insured and defendant as to the liability of the association for further indemnity, the insured contending that said illness was of so permanent a character that it would disable him the balance of his life, while defendant contended that said illness did not necessarily require confinement within doors and that insured was not necessarily totally disabled and should not suffer a total loss of time.

On June 29, 1934, a written agreement was entered into, wherein the defendant association agreed to pay to insured the sum of $175 in cash for the two months expiring on May 21, 1934, for which insured had claimed the full sum of $200. It was further agreed that so long as insured should continue to be disabled, either totally or partially, the association would continue to pay him at the rate of $50 a month, and that during the continuance of such disability the association would not require that the insured be continuously confined within doors, or require regular visits by a physician, it being understood and agreed that the insured may without prejudice endeavor to remain outdoors, and engage in his former occupation of jeweler and optician, provided he remains totally or partially disabled from ful-

filling all of the duties of said occupation, said agreement being duly executed by the deceased and the defendant company.

Thereafter said company paid the $50 a month, as provided in said supplemental agreement, but denies that the policy was in force on the date of the death of the deceased, but charges that the deceased failed to pay the $9 quarterly premium due September 1, 1933, and never thereafter paid any premiums whatever thereon, and that said policy did not cover any accidental injuries sustained after said date, and prays that plaintiff's petition be dismissed.

The reply denies generally the allegations of the answer, and charges that defendant failed to mail any notice to deceased of any premiums claimed to be due.

At the close of plaintiff's case, defendant moved for a directed verdict, as did the plaintiff, but after argument the defendant withdrew its motion and introduced its evidence. At the close of the case, defendant again moved for a directed verdict on eight grounds. After argument the court overruled this motion.

Ten assignments of error are set out for reversal of the judgment, the principal ones being that judgment is contrary to law, and not sustained by the evidence.

The policy was issued on November 30, 1923, and contains the application, in which insured stated that he was born February 3, 1883, was five feet eight inches tall, weighed 175 pounds, and was the owner of Larsen's Jewelry Store. The beneficiary was his wife, Laura Larsen, with whom he resided at 2878 California street, Omaha.

This policy provided that, in the event the policyholder became disabled through sickness or accident and was confined indoors and regularly attended by a physician, defendant would pay him $100 a month. It also provided that his estate would be paid $5,000 in the event of accidental death. Deceased paid the premiums on this policy for about ten years, and on May 21, 1933, suffered a stroke of paralysis, from which he never recovered.

The defendant promptly paid the insured $100 a month

total indemnity for this disease from May, 1933, to March, 1934, and then stopped payments. A series of conferences followed, the result of which was a supplemental written agreement between the parties, consisting of three type-written pages, which was executed June 29, 1934, by the parties, and provided that the monthly payments would be reduced to $50 a month, and relaxed the requirements so the insured could be outdoors and not be constantly attended by a physician, and might fulfill part of his duties as a jeweler. However, it also provided that if his disability ceased, the payments of $50 a month should likewise cease.

This supplemental agreement is silent as to two important matters: (1) What about payment of quarterly premiums? (2) Was the policy as a whole still in force?

Parol evidence is generally admissible when offered to explain or show the true nature of the transaction, and not to vary the terms of a written instrument. *Spangenberg v. Losey*, 116 Neb. 112, 216 N. W. 191; *Brock v. Lueth*, 141 Neb. 545, 4 N. W.(2d) 285. For where a contract is uncertain and ambiguous, evidence may be received to show the construction placed upon it by the parties. *In re Estate of Enyart*, 100 Neb. 337, 160 N. W. 120; 22 C. J. 1173.

The testimony included this evidence:

Arthur Rasmussen, brother-in-law of Louis C. Larsen, testified: "Q. And particularly with reference to the subject of payment of premiums what was said, if anything? * * * A. He (Mr. Belfiore) told Mr. Larsen that no other payment of premiums would be required. Q. Did he tell him how much he was to receive? A. Yes, sir. Q. What did he say about that? A. Fifty dollars net a month to him."

Joseph F. Belfiore, the collector and adjuster of defendant company, testified: "Q. I am asking you whether you had anything to do with the collection of premiums on Mr. Larsen's policy. A. Yes. Q. What did you have to do with that? * * * A. I explained to them they would get the monthly benefits regardless of the premiums, * * * and I explained to them they had already paid premiums for this

monthly income benefit, and if no other premiums were paid it would not cover anything else in the contract, that all other benefits would be null and void. * * * Q. Then didn't you have some discussion at that time with Mr. Larsen with reference to whether or not he would be required to pay any more premiums? A. We had a number of discussions. * *. * He was concerned about whether or not he would get his monthly income, and he wanted to know about the premiums, and I always explained to him that he would get his monthly income regardless of whether he paid the premium or not, but the rest of the policy would not be in operation."

Miss Anne B. Horne, who was the supervisor of the premium notice department of defendant company, testified: "Q. Now, can you tell from the exhibit the date of the last premium payment on that policy, and tell where it is shown and in what way? A. Paid on May 23, 1933. * * * Q. Now, is there any way of telling from that card what premium was paid on that date? A. It was the June premium that was paid to September first. Q. Of what year? A. 1933. Q. The premium was paid from June to September? A. Yes. * * * Q. So the card indicates no notice was sent after August 18, 1933? A. That is right."

It is clear from this evidence that, instead of continuing to pay the quarterly premiums of $9 each and receiving $100 a month total disability, the insured, under his greatly reduced earning capacity, decided to accept only $50 a month as long as he was even partially paralyzed, as provided in the supplemental agreement, and to discontinue to pay $36 a year in premiums for the purpose of keeping all of the provisions of the entire policy in full force and effect.

Now, on October 19, 1941, a fire occurred in plaintiff's home, and he went to the basement, where he died by accidental suffocation, recovery for which must be based on the original policy issued November 30, 1923, and not on the supplemental agreement, dated June 29, 1934.

The plaintiff contends that this agreement of June 29, 1934, provided for the continuance in force of the original

policy of insured, providing for $5,000 for accidental death; that if it did not do so by express terms, and was ambiguous, then the oral testimony allowable in such cases supports such a contention. We have therefore examined and set out some of the oral testimony, which we believe fails to support the contention of plaintiff.

An examination of the legal situation of the parties convinces us that the supplemental agreement recognized that the original policy was a valid and binding obligation. But it was limited in its coverage. It was in full force and effect as to those claims arising from its issuance in November, 1923, up to September 1, 1933, during which period of time the required premiums had been paid. There was also a standard provision providing it might be reinstated to cover future periods.

Therefore, the evidence supports the conclusion that the supplemental agreement to pay $50 a month for life for the disability occurring from the disease of paralysis, without the payment of any additional premiums, did not keep the original policy in force to require payment of a claim for $5,000 accidental death, arising some seven years after the supplemental agreement had been entered into, the original policy having lapsed as against such a claim by nonpayment of premiums after September 1, 1933.

Vigorous exceptions have been taken to the instructions by the court. Instruction No. 2 provided generally that, before the plaintiff would be entitled to a verdict, he must establish that the defendant company agreed it would carry the policy in question without the payment of additional premiums, and if he failed to establish this fact by a preponderance of the evidence, then the jury will return their verdict that there was no such agreement.

In the opinion of this court, there was no such agreement in the written supplemental contract, nor does the evidence set out herein indicate that it was within the contemplation of the parties.

Having reached the conclusion that the verdict and judgment are not supported by the evidence, it is the order of

this court that the judgment of the district court be reversed and set aside and the action be dismissed.

REVERSED AND DISMISSED.